NAT T. SPERLING, Appellant, *v.* ANNIE BABIAN, Respondent, Impleaded with ALFRED ROWAN and Others, Defendants.

ANNIE BABIAN, Respondent, *v.* ALFRED ROWAN, Defendant, Impleaded with NAT T. SPERLING, Appellant.

First Department, November 1, 1929.

*I. Maurice Wormser* of counsel [*Isaac Josephson*, attorney], for the appellant.

*David J. Gallert* of counsel [*Gallert, Hilborn & Raphael*, attorneys], for the respondent.

O'MALLEY, J. Two actions were tried together. In one, Sperling, as plaintiff, sought foreclosure of a second mortgage on

property owned by the defendant Annie Babian. In the other, Babian, as plaintiff, sought a cancellation and surrender of the same instrument. For purposes of convenience, Sperling will be referred to as the plaintiff herein, and Babian as the defendant.

Plaintiff's action was the usual one to foreclose. The mortgage involved was in the sum of $6,000 and was executed by the defendant July 25, 1923, to one Kasapian. Three hundred dollars on principal was to be paid October 8, 1923, and a like sum every three months thereafter until the total sum had been paid. It was accompanied by the defendant's bond, and both instruments were thereafter and on June 22, 1926, assigned to one Eva Frank. Upon her death her executor succeeded to her interest, and on July 8, 1927, the plaintiff took by assignment from the estate.

The assignment to plaintiff recited a consideration of $6,000 and described the mortgage as one given to secure that sum. No reference to any prior payments on principal, or to the amount remaining due, was contained therein.

As a basis for a complete defense of usury, the defendant pleaded that there was due but the sum of $4,850, and that plaintiff loaned but such sum to the defendant. She further alleged that to secure the loan she was required to execute to the plaintiff her bond in the sum of $500 secured by a third mortgage on the property, and at the same time, by agreement, the time of payment of such mortgage was extended. She alleged that she thus obligated herself to the plaintiff in the sum of $6,500 with interest at six per cent for the sum of $4,850 advanced. A payment of $400 on account of principal was claimed.

The same facts were also alleged by way of partial defense, and at the commencement of the trial the defendant was permitted to plead as an additional and complete defense, usury in the inception of the bond and mortgage, in that she was loaned by the original mortgagee, Kasapian, only the sum of $5,000. These allegations of defendant's answer were likewise incorporated in her complaint and made the basis of affirmative relief in her favor.

P aintiff's action was predicated upon default of payments of principal and interest on the second mortgage as provided for in the extension agreement, which was also alleged in the complaint. By its terms the payment of the mortgage was extended to July 8, 1930, conditioned upon payment of $100 on account of principal on April 8, 1928, and $200 or more quarter-annually thereafter.

The decisions in defendant's favor were predicated upon the theory that the defendant had established both her defenses of usury and held in consequence that both the original mortgage and the extension agreement made by the defendant were void.

In our view neither of these defenses was established. Respecting the first, the evidence fairly established that the plaintiff in fact paid in excess of $5,300 for the assignment, and in addition advanced $500 to the defendant on account of the third mortgage. It appears that the defendant herself was anxious that an assignee might be found. One Hirsch, the attorney for the Frank estate, testified that before the assignment to the plaintiff was made, the defendant came to him and requested that he should not disclose to the plaintiff the fact that there was due on the mortgage only the sum of $4,850 lest the plaintiff might not go through with the transaction. This witness testified that he informed the defendant that he would have to disclose the true facts if questioned, but if inquiry on the subject were not made, he would comply with the defendant's request. It is significant that the defendant did not deny Hirsch's testimony in this respect. As the record stood, therefore, the defendant was quite willing to have the plaintiff believe that he was taking the assignment of a valid obligation to the extent of $6,000.

The plaintiff testified that he made no inquiry as to the amount actually due and believed that the obligation was a valid and subsisting lien to this extent. So far as the plaintiff was concerned, therefore, he took an assignment of defendant's obligation to the extent of $6,000 which, were it not for the extension agreement, was payable forthwith. By the provisions of the latter instrument, the terms of payment of the mortgage were changed and time of payment thereby extended to July 8, 1930. The rate of interest upon this was but the legal rate of six per cent.

With respect to the second defense it appears that the extension agreement to which the defendant was a party recited that the defendant was the owner of the premises upon which " said mortgage is a valid lien for the sum of Six thousand dollars principal, with interest thereon at the rate of six per centum per annum, payable as above set forth, and that there are no defenses or offsets to said mortgage or to the bond which it secures." At the same time the defendant executed an estoppel certificate certifying that " said mortgage, so to be assigned, is a valid lien on said premises for the full amount of principal and interest due thereon, namely, Six thousand ($6,000.00) dollars, with interest at six per cent per annum from July 8th, 1927, and that there are no defenses or offsets to said mortgage, or to the bond which it secures."

It is urged by the defendant that she is estopped neither by the recital in the extension agreement, nor by the estoppel certificate itself, for the reason that the plaintiff had convenient and ready means for acquiring knowledge of the real facts and instead of

availing himself thereof, conducted himself with careless indifference to such means of information. In other words, it is asserted that the plaintiff may not rely upon the estoppel certificate for the reason that he was chargeable with notice that under the terms of the original mortgage the face of the mortgage should have been substantially reduced if payment had been made according to its terms.

We do not take this view. It is true that the face of the mortgage showed that some $4,500 of the mortgage should have been paid. Indisputably, however, some part was due and unpaid. It was only the extent of such that was in doubt. The plaintiff did all that he was called upon to do when he procured the estoppel certificate; when he let it be known at the closing that he thought he was taking a $6,000 obligation, and nothing was said to the contrary by those who knew otherwise; and since there was no notation of any payment whatsoever made on the bond and mortgage itself. The Frank estate, moreover, was in form, at least, receiving some $5,300, an implied representation, we think, that at least that amount was still due and owing. It was a legitimate discount as between the holder of the mortgage and the assignee thereof to pay less than the amount purporting to be due.

While it is true that upon the state of the record before us, an inquiry on the part of the plaintiff to the representatives of the Frank estate might have disclosed the true situation, we are to judge plaintiff's conduct, not in the light of future events and the adducement of evidence upon the trial, but with respect to the situation as it existed at the time of the transactions in question.

We have not overlooked the claim that defendant did not understand the legal purport of the estoppel certificate itself. The defendant, however, admitted having read the extension agreement, which, as already appears, contained language of similar purport. It further appears that she was not wholly inexperienced in business affairs, and her attorney who at her request was present during part of the closing in connection with a *lis pendens* previously filed, admitted having looked over the extension agreement.

It follows that the judgments in favor of the defendant should be reversed, with costs, and judgments rendered in favor of the plaintiff, with costs to the plaintiff.

DOWLING, P. J., MERRELL and PROSKAUER, JJ., concur.

In the first action: Judgment reversed, with costs, and judgment directed in favor of the plaintiff, with costs. Settle order on notice reversing findings inconsistent with this determination, and con-

taining new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.

In the second action: Judgment reversed, with costs, and judgment directed in favor of the defendant Sperling, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.