Louis A. Montague, Plaintiff, *v.* Bank for Savings in the City of New York, Defendant.

Supreme Court, Special Term, New York County, June 2, 1943.

*Richard S. Holmes* for plaintiff.

*Walbridge S. Taft* for defendant.

EDER, J. In equity. Action to rescind a contract for the purchase and sale of certain real property. The plaintiff purchased from the defendant a lot and the building erected thereon; the transaction was evidenced by a contract in writing; the agreed consideration was paid, title closed and a deed was executed and delivered to the plaintiff. The contract contained the following provision, among others: " The purchaser represents that the purchaser has inspected said premises and knows the condition thereof, is purchasing said premises ' as is ' and will accept the same in their present condition and repair."

There is no claim by plaintiff that he was persuaded to sign the contract by reason of any fraud or artifice practiced upon him; he acknowledges that he read the contract before he signed

it and understood its terms; that he made some inquiry regarding a certain feature of the contract dealing with an easement in the nature of a license to use an adjoining building as a secondary fire exit; that he called for an explanation concerning it and asked to see the license agreement, which was shown him and which he found was a revocable one and with respect to which some discussion ensued, after which he affixed his signature to the agreement. He was fully informed and understandingly aware of the terms and conditions of the contract and subscribed it as a deliberate and intentional act.

We thus have a case where no feature of fraud, trickery or overreaching is involved; yet plaintiff by this action seeks a rescission of the contract claiming he was induced to enter into it and to purchase the property by virtue of a representation that the building was a fireproof structure, upon which representation he relied, when, in truth, it was not fireproof; that he thus did not get what he had bargained for. The facts in connection therewith are, briefly, these: The defendant decided to dispose of certain of its real estate holdings, among which was the parcel involved in this action; to that end the defendant prepared and distributed among real estate brokers in general a list of the properties it was offering for sale, giving details thereof; one of such real estate brokers who received the listing was a concern known as Adams & Company; it had forwarded to the plaintiff the details of divers parcels, including the one ultimately acquired by him; Adams & Company mistakenly described that building as being fireproof.

Plaintiff concedes that the representation by Adams & Company was the result of an honest mistake; that as a misrepresentation it was unintentional and that no fraud was involved. Plaintiff also concedes that Adams & Company had no authority to make the representation now complained of and did not represent the defendant other than in the usual and customary manner of a real estate broker seeking to find a prospective buyer. It is also conceded by plaintiff that the defendant had no knowledge of the representation made by Adams & Company to him that this was a fireproof building.

It is nonetheless contended by the plaintiff that insofar as his right to seek rescission in equity is concerned, no intentional fraud need be shown; that it is sufficient to warrant rescission that a material misrepresentation was made, even though innocently, upon which the complainant relied and acted; that where a material misrepresentation is made by an agent it is fully binding on the principal even though he is

wholly innocent thereof; and that within the rules of decision and doctrines applicable to such a situation, plaintiff is entitled to a decree rescinding the contract and the transaction *in toto* and to be relieved therefrom.

To represent a building to be fireproof when it is not and induce a transaction in reliance thereon constitutes a false statement as to a material fact and is sufficient to support an action to recover damages for fraud (*Dietz* v. *Yetter,* 34 App. Div. 453) and will also suffice to sustain a suit in equity for rescission (*Seneca Wire & Mfg. Co.* v. *Leach & Co.,* 247 N. Y. 1, 8) if the factual situation renders applicable rules and doctrines effective.

In instances like those appearing in *Bloomquist* v. *Farson* (222 N. Y. 375), the *Seneca* case (*supra*), *African Metals Corp.* v. *Bullowa* (288 N. Y. 78) and *Harriss* v. *Tams* (258 N. Y. 229), cases on which the plaintiff relies, the representations were either of a fraudulent nature or were innocently made, but in each case emanated from a selling agent of the defendant acting in the course of his employment, as such, and within the apparent scope of his authority; in the case at bar no such agent of the defendant made any representations to the plaintiff, for Adams & Company was merely acting as a broker and in no other capacity. Incidentally, in the *Harriss* case the action was not brought against the principal but against the agent.

In the case of one employed as an agent to sell he has the authority, real or apparent, to bind his principal by a formal contract and in consequence the principal is liable for the false representations of the agent (*Friedman* v. *New York Telephone Co.,* 256 N. Y. 392, 394), but the employment of one as a real estate broker to enter into negotiations with prospective purchasers carries with it no incidental powers to make representations as to the condition of the property or to otherwise bind his employer by representations or by contract. Such broker, it is said, is sent out as a mere negotiator; perhaps he may more appropriately be called a discoverer or finder, but whatever he be styled his service is to seek a potential buyer and to bring him and the seller together. Unlike a selling agent, who is clothed with real or apparent power to bind his principal by a formal contract, such a broker possesses none of these attributes and the transaction must be consummated by the principals (*Friedman* case, *supra*); and in that connection it is said that " It follows that if such a broker, in his zeal and to carry out his own purposes, makes false representations as to the con-

dition of the property, the principal is not bound thereby." (*Friedman case, supra,* p. 395.)

Thus the misrepresentation made by Adams & Company, as such broker, could not bind the defendant, whether intentionally or innocently made, and·no sustainable cause of action at law to recover damages for fraud or for equitable rescission can be predicated thereon against the defendant.

I am, furthermore, of the opinion that no basis for a suit for rescission would here exist even if the misrepresentation complained of was intentionally made and by one occupying the status of a selling agent as distinguished from a mere broker, because the proof establishes that the purchase and sale did not finally result from any act of the agent but was the culmina-. tion of the negotiations which the principals themselves conducted, and that whatever representation was made to the plaintiff by Adams & Company in the preliminary negotiations the ultimate terms of the contract were those made by and between the principals. Hence, any prior representations, whether made by agent or broker, must be conclusively deemed to have been discarded and unrelied on and superseded by the agreement of the principals, and such prior representations cannot be revived to later form the basis of a claim for rescission. (*Daylight Acetylene Gas Co.* v. *Hardesty,* 112 S. W. [Ky.] 847, 848.) Here, the status of Adams & Company did not even rise to the dignity of a selling agent, though in the situation disclosed it would not have made any difference as the principals themselves made the final terms.

The general rule and doctrine upon which plaintiff relies, as exemplified by the cases referred to, is inapplicable to the instant case because the facts in the case at bar are different in fundamental respects, as previously mentioned. But aside from this, the statement in the contract that the plaintiff had inspected the property and knew its condition and was purchasing it " as is " and would accept it in its present condition, waived, if it did not entirely destroy, any prior representation as to the condition of the building, and, as well, any prior reliance thereon.

The manifest purpose of including this provision in the contract was to protect the defendant, as vendor, from any subsequent attempt by plaintiff, as purchaser, to urge, as is now attempted, and to foreclose, any assertion or claim that there was a misrepresentation as to the condition of the premises and that it influenced the buyer to make the purchase. The plaintiff argues that this clause relates only to the state of the

premises with respect to repairs made to the premises and has no relation to the nature of the construction of the building. I do not share this view. Plaintiff also urges that in any event the language is ambiguous and hence any doubt should be resolved against the defendant since it drew the contract. I see no ambiguity; the language is entirely clear and its meaning and intent apparent; it relates to both condition and repair and only by a strained and unjustified construction can the language or the phrase " as is " be given a construction such as the plaintiff seeks. Whether the insertion of this provision is the dictate of previous experience or is the product of general precaution, it is plainly designed to guard against just such a claim as is now advanced by the plaintiff and I know of no reason why it should not be enforced against one who makes the declaration. (*Kreshover* v. *Berger,* 135 App. Div. 27, 28.) The mentioned provision imports the qualities of a certificate of estoppel and carries with it the protection which the dignity of such an instrument and the solemnity of its declarations accord. (*People* v. *Beguelin,* 184 App. Div. 759; *Sperling* v. *Babian,* 227 App. Div. 53; *J. & A. Corp.* v. *Cass,* 238 App. Div. 864.)

" Where one declares the existence of a fact to be true and another acts upon such declaration, the party asserting the fact cannot, as a general rule, be heard later to say that his first statement was untrue, when the result of such denial would be to his own advantage and to the damage of the opposite party." (*Angerosa* v. *White Co.,* 248 App. Div. 425, 433; affd. 275 N. Y. 524.)

If the plaintiff's construction is to receive judicial recognition no vendor can ever protect himself against a false and fraudulent claim respecting a purported prior representation concerning the condition of the premises which are the subject of the sale and one can readily visualize the opening of a fertile field for the perpetration of fraud. Such a construction should be given as will tend to carry out the obvious purpose for which the provision was drawn and as will prevent such a subsequent claim. It is a sensible and fair provision, fully consonant with good morals and a sound public policy and one to which no honest person can have any objection. Its incorporation in a contract serves a useful purpose and is to be encouraged. If premises are not sold in their existing condition, it is easy enough to have the contract say so in simple and definite terms.

If the plaintiff has made a bad bargain he cannot avoid it in this manner, as he apparently seeks to do. The defendant has the right to insist that the extent of its obligations and liability, if

any, shall be measured by the contract as deliberately made by the parties.

Lastly, the evidence fully establishes that the plaintiff did not rely on any representation that the building was fireproof and that he was not induced thereby to make the contract of purchase, and this I find to be the fact. The undisputed testimony is that the plaintiff, prior to making the contract, inspected the building; it also appears that he has had experience in real estate as a builder and as an operator, both here and abroad, and had previously constructed fireproof buildings. It also appears that he read the contract before he signed it and knew and understood its terms; he voiced no objection to the clause therein, assuring, if not formally certifying, that he had inspected the premises and knew the condition thereof and was taking the property in its present condition, whatever it be, which is what the phrase " as is " means as it is there employed.

I am satisfied that the plaintiff knew and must have known that the building No. 574 Fifth Avenue was not fireproof for the necessity of having a secondary fire exit was occasioned by the fact that nonfireproof structures are required by law to have such an exit, and it was for this reason that the defendant sought and obtained from the owner of the adjoining premises a license or easement to use his building for that purpose. This license agreement was explained to the plaintiff at the time he made inquiry regarding it when he read the contract, and he thereafter consummated the transaction and took title.

It appears, too, that in accepting a price of $172,500, the defendant took into consideration that in the event the owner of the adjoining premises revoked the license it would become necessary for plaintiff to construct a secondary exit which would cost between $1,500 and $2,500 and of which the plaintiff was advised, and for this reason the sales price was put at $172,500; in other words, the defendant made the plaintiff an allowance in that sum, as otherwise the selling price would have been higher, of which the plaintiff was informed and all of which I find to be the fact.

For the reasons given the plaintiff's claim is devoid of merit and the purported cause of action untenable. Accordingly, judgment is rendered in favor of the defendant dismissing the complaint upon the merits, with costs. Exception to plaintiff. Proposed findings passed upon. Submit decision and judgment on notice. Thirty days' stay; sixty days to make a case.