APPROVED PROPERTIES, INC., Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, Richmond County, August 25, 1966.

*Philip Meltzer* for plaintiff. *J. Lee Rankin, Corporation Counsel* (*Percival Sprung* of counsel), for defendant.

JOHN J. KELLY, J. In this action the plaintiff purchaser in its complaint and the defendant seller in its counterclaim seek specific performance of a contract for the purchase and sale of real property. The issues requiring determination arise from plaintiff's claim for an abatement in the purchase price.

At an auction sale conducted by the defendant on December 18, 1963, plaintiff was the successful bidder for premises No. 42 Amity Place, in this county, an irregular parcel, 42 by 101 feet, and improved with a two and one-half story frame dwelling. The purchase price was $6,000. The terms and conditions of the memorandum of sale provided that $1,200 be paid at the time of sale; $1,800 within 60 days thereafter; and $3,000 by the execution by the plaintiff of a purchase-money mortgage on the closing of title 90 days after the date of sale, viz., March 18, 1964. The memorandum of sale further provided that (1) " The risk of loss or damage by fire between the date of sale and the date of delivery of the deed is assumed by the purchaser " and, (2) " The successful bidder will be required to accept the property in its ' as is ' condition on the date of closing of title." The plaintiff has paid $3,000 but has refused to execute the purchase-money mortgage. It claims that between the date of sale on December 18, 1963, and the date fixed for closing of title on March 18, 1964, damages occurred to the building by reason of acts of vandalism and, to the extent of the damage caused thereby, it is entitled to an abatement in the purchase price. The defendant contends that no such damage occurred to the building and, additionally, asserts that even should such damage have occurred the plaintiff is not entitled to an abatement in the purchase price because it is " required to accept the property in its ' as is ' condition on the date of closing of title " as provided in the memorandum of sale.

Notwithstanding defendant's contention to the contrary, I find that between the date of sale and the date fixed for closing of title, and more specifically between January 14, 1963 and February 14, 1963, damages were sustained to the buildings from acts of vandalism of unknown origin without any negligence on the part of either of the parties hereto, and that the total repair and replacement value of the items damaged is $198, as more fully set forth in the schedule of the damaged items and the repair and replacement value thereof annexed hereto.

Nor does the " as is " clause in the memorandum of sale bar an abatement in the purchase price to the extent of the amount of such damages.

While it was formerly the rule that, in the absence of express contract provision to the contrary, the risk of loss between contract and closing was on the purchaser (*Sewell* v. *Underhill*, 197 N. Y. 168), the rule has been otherwise by statute for well over a quarter century. The statute (General Obligations Law, § 5-1311, subd. 1, par. a, cl. [2]) provides that where neither title nor possession has been transferred to the purchaser, as in the case here, the contract shall be interpreted, *unless it expressly provides otherwise,* as including an agreement that, if an immaterial part of the property be destroyed without fault of the purchaser, there shall be an abatement of the purchase price to the extent of such destruction (*Heerdt* v. *Brand,* 272 App. Div. 143), and this includes an abatement for damages caused by vandalism (*New York Med. Coll.* v. *15-21 East 11th St. Corp.,* 90 N. Y. S. 2d 591). The only expressed provision in the instant contract of sale concerning risk of loss is that concerning the risk of loss by fire. Therefore, under the statute this contract must be interpreted to include an agreement that, if an immaterial part of the property is destroyed other than by fire and without the fault of the purchaser, then there shall be an abatement of the purchase price to the extent of such destruction.

The " as is " provision in the contract is not one which expressly shifts the burden of risk of loss from where it is otherwise placed by statute. This conclusion is made all the more obvious by the inclusion of an *expressed* provision in the contract that the purchaser accepts the risk of loss by fire. Had the " as is " clause meant what defendant contends, there would have been no need for defendant to have included the specific provision about loss by fire. The " as is " clause here simply means that the purchaser must take that which he bargained for, reasonable use, wear, tear and natural deterioration excepted. It was not required to accept something changed by intervening acts of destruction. " As is " clauses are intended to negative the existence of any representations by the seller as to the particular condition, fitness, type of construction, etc., of the premises sold. (See *Mortague* v. *Bank for Sav. in City of N. Y.,* 181 Misc. 863; Harvey, Real Estate Law and Title Closing, [3 ed.], § 76; Ann. 97 ALR 2d 849–853.)

On about June 18, 1964, after the date fixed for closing of title and during the pendency of this action, the building was substantially destroyed by fire. The plaintiff contended that it was entitled to recover damages for the fire loss asserting that " because of the vandalism the plaintiff was not able to protect itself against the possible loss by fire by putting on fire insur-

ance and therefore this risk of loss by fire should not be borne by the purchaser ''. The proof does not support that contention. Immediately after the execution of the contract to purchase the plaintiff obtained a policy of fire insurance on the premises insuring the plaintiff as a '' purchaser under contract ''. On February 6, 1964, before any acts of vandalism had been discovered, the insurance company advised its agent to cancel the policy of fire insurance because '' the property is in a rundown area and is itself a firetrap.'' Furthermore, there was no representation by the defendant in the contract that the building was insurable against loss by fire. Additionally, no effort was made to plead or prove that the fire loss was attributable to the negligence of the defendant and the record is devoid of any proof of damage resulting from the fire.

Accordingly, plaintiff is entitled to judgment of specific performance directing that defendant execute and deliver its deed for the contracted premises with an abatement of the purchase price of $198, with interest thereon from May 4, 1964.

The foregoing constitutes the decision of the court pursuant to CPLR 4213 (subd. [b]). All motions upon which decision was heretofore reserved are resolved accordingly.