**INTERNATIONAL CLINICAL LABORATORIES, INC.,**
Plaintiff,

v.

**Milton S. STEVENS, Magnusonic Devices, Inc. and Myron Levitt,**
Defendants.

No. CV 87–3472.

United States District Court,
E.D. New York.

April 12, 1989.

Breed, Abbott & Morgan by David D. Patterson, New York City, for plaintiff.

Linden & Deutsch by Joseph Calderon, New York City, for defendant Stevens.

Myron Levitt, Oyster Bay, N.Y., pro se.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff International Clinical Laboratories, Inc. ("ICL"), the present owner of a site on which it is alleged that various hazardous substances are present, seeks recovery of the costs associated with ridding the site of such substances. Named as defendants are Milton S. Stevens, the former owner of the site ("Stevens"), Magnuson Devices, Inc., Stevens' tenant prior to the sale of the site to ICL ("MDI") and Myron Levitt, MDI's principal shareholder ("Levitt").

Presently before the Court is ICL's motion for partial summary judgment. Stevens and Levitt, acting on behalf of himself and MDI, oppose plaintiff's motion. Also before the Court is Stevens' motion for summary judgment. After discussing the relevant statutory framework and the factual background of this action the Court will consider the parties' motions.

### I. *Statutory Framework*

ICL seeks recovery of the costs associated with the cleanup of the site at issue pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–9607 —a statute commonly referred to as "CERCLA." CERCLA authorizes the state and federal governments and private parties to incur the costs of responding to releases or threatened releases of hazardous substances into the environment and to recover such costs from those who are deemed to be responsible. Statutorily responsible parties are set forth in 42 U.S.C. § 9607 ("Section 9607"). Section 9607 states, *inter alia,* that:

> any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of
> ... shall be liable for—

> (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C. § 9607(a). The National Contingency Plan is prepared by the Environmental Protection Agency and establishes the procedures and standards for responding to releases of hazardous substances. *State of New York v. Shore Realty,* 759 F.2d 1032, 1041 (2d Cir.1985); *see generally* 42 U.S.C. § 9605.

Although Section 9607 has been interpreted to impose strict liability upon responsible parties, *see Shore Realty,* 759 F.2d at 1042, the statute contains certain limited defenses. Specifically, Section 9607 provides, in pertinent part, that liability will not be imposed if an otherwise responsible person can "establish by a preponderance of the evidence" that the release of the substance and the resulting damage were caused solely by:

> an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions;

42 U.S.C. § 9607(b)(3).

### II. *Factual Background*

As noted above, ICL states that it is the current owner of a site from which hazard-

ous wastes are presently being eliminated. The site at issue is a parcel of land located at 290 Duffy Avenue in Hicksville, New York and consists of approximately three acres of land and a building (the "Duffy Avenue Site"). When ICL first became interested in purchasing the Duffy Avenue Site it was owned by defendant Stevens and leased by Stevens to defendant MDI. Although MDI's lease on the property was not to expire until 1987, Stevens and ICL entered into a contract of sale pursuant to which Stevens was to sell, and ICL was to purchase, the Duffy Avenue Site. The contract of sale closed on December 22, 1986 and ICL took possession of the property.

Shortly thereafter, ICL states that it was informed by the New York State Department of Environmental Conservation (the "DEC") that MDI was responsible for illegally discharging hazardous wastes into cesspools at the Duffy Avenue Site and that the site required soil and hydrological investigation to determine the extent of the contamination. ICL further alleges that in the course of MDI's business it had occasion to use raw materials designated as hazardous under CERCLA and that groundwater and soil testing showed elevated levels of various hazardous substances.

Throughout its investigation into the condition of the Duffy Avenue Site, ICL repeatedly informed Stevens of its findings and demanded that Stevens assume responsibility for the testing and cleanup costs. Disclaiming any responsibility for the costs incurred by ICL, Stevens refused to make any payment. Due to the apparent insolvency of MDI and Levitt, ICL never demanded, prior to the institution of this lawsuit, that MDI and/or Levitt reimburse ICL for the cleanup costs.

Because of the aforementioned conditions ICL has not yet relocated its business operation to the Duffy Avenue Site. Testing and cleanup procedures are ongoing and ICL has engaged in negotiations with DEC aimed at entering into a final consent order that will govern the terms of the final testing and cleanup of the Duffy Avenue Site. As of the filing date of this motion ICL alleges that it has incurred expenses of approximately $53,000 in connection with the testing and cleanup done at the Duffy Avenue Site. Neither Stevens, MDI nor Levitt have reimbursed ICL for any part of these costs.

### III. *The Parties' Motions*

ICL and Stevens have cross-moved for the entry of partial or full summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ICL seeks judgment awarding it all costs associated with the testing and cleanup of the Duffy Avenue Site that have been incurred to date. ICL further seeks a declaratory judgment that defendants are liable for all additional costs that may arise in the future in connection with the aforementioned investigatory and cleanup activities. ICL seeks recovery against all defendants pursuant to CERCLA and against Stevens pursuant to CERCLA and the contract of sale for the Duffy Avenue Site (the "Contract"). Stevens' cross-motion seeks the entry of summary judgment on the grounds that ICL has stated no cause of action under either the law of the State of New York or CERCLA.

Because the crux of the parties' motions center around the same legal issues the Court will not, at this juncture, discuss the motions separately. Instead, the Court will focus on certain predominating legal issues. After identifying the appropriate legal standard, the Court will address whether Stevens and/or MDI and Levitt are liable parties under Section 9607(a) of CERCLA. After assessing defendants' status as liable parties, the Court will consider certain legal issues concerning whether the costs incurred by ICL are recoverable under CERCLA.

#### A. Discussion

As noted above, ICL has moved for the entry of partial summary judgment. Stevens has moved for the entry of full summary judgment. Motions for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled

to judgment as a matter of law." Fed.R. Civ.P. 56, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). The burden is upon the moving party to clearly establish the absence of a genuine issue as to any material fact, and the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue*, 834 F.2d at 57.

Since the presence of only a genuine and material issue of fact precludes the entry of summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the summary judgment procedure allows the Court to determine whether a trial is necessary and to dispose of a claim that is meritless. Summary judgment must, however, be "used selectively to avoid trial by affidavit." *Donahue*, 834 F.2d at 57.

### B. Stevens' CERCLA Liability

As noted above, Section 9607 makes the "owner or operator" of a facility at which hazardous wastes were, or are likely to be, released, liable for the costs of responding to the damage. *See* 42 U.S.C. § 9607(a)(2). Stevens does not contest the fact that he owned the Duffy Avenue Site prior to the sale to ICL. He argues, however, that he is entitled to the entry of summary judgment in his favor because an owner in his factual circumstances should not be held strictly liable under CERCLA.

In support of his argument, Stevens argues that he did not generate and had no knowledge of the generation of the hazardous materials at the Duffy Avenue Site. These facts are alleged in support of a three-pronged legal argument. First, Stevens argues that since the Contract provided that Stevens was conveying the Duffy Avenue Site "as is," any action, including one based upon CERCLA, is barred. Second, Stevens argues that he is entitled to take advantage of the above-quoted defense set forth in Section 9607. Finally, Stevens argues that ICL is barred, by the principle of equitable estoppel, from maintaining the present action. Each claim is discussed below.

#### i. *The "AS IS" Clause of the Contract*

■ Paragraph 20 of the Contract provides, in pertinent part, that ICL has inspected the Duffy Avenue Site and agrees to purchase the property "as is" and in its "present condition subject to reasonable use." Although Stevens argues that the "as is" clause bars ICL's claims under both New York law and CERCLA, the Court will discuss the issue here, in the context of its discussion of Stevens' CERCLA liability, since the legal issues are related.

Under New York law an "as is" clause in a contract is interpreted to bar only actions based upon breach of warranty. Thus, it has been stated that the purpose of such a clause is to "negate the existence of any representations by the seller as to the particular condition, fitness and type of the premises sold. It merely means that the purchaser must take that for which he bargained, reasonable use, wear, tear and natural deterioration are excepted." *Redner v. City of New York*, 53 Misc.2d 148, 278 N.Y.S.2d 51, 54 (Civil Ct. N.Y. County 1967); *Approved Properties, Inc. v. City of New York*, 52 Misc.2d 956, 277 N.Y.S.2d 236, 238 (Sup.Ct. Richmond County 1966); *Montague v. Bank for Savings*, 181 Misc. 863, 43 N.Y.S.2d 321, 325 (N.Y. County 1943). While the "as is" clause prevents a purchaser from recovering on a breach of warranty theory, it does not necessarily follow that a claim based upon CERCLA is similarly barred.

In support of its argument that the "as is" clause bars ICL's CERCLA claim, Stevens relies exclusively on *Mardan Corp. v. CGC Music, Ltd.*, 804 F.2d 1454 (9th Cir. 1986). In *Mardan* the Court of Appeals for the Ninth Circuit, applying New York law, held that a broadly worded settlement agreement barred the plaintiff from asserting a cause of action against an otherwise liable party pursuant to CERCLA. According to Stevens, *Mardan* stands for the proposition that CERCLA does not supercede state law and that the agreement of

private parties is controlling in a CERCLA action.

The issue of whether private parties may enter into contracts absolving a party from CERCLA liability may be open to question. For example, ICL has argued that the statutory defenses are exclusive and that the ultimately enacted subsection (e) of section 9607 is evidence of Congressional intent to bar the enforcement of certain indemnification agreements. *See* 42 U.S.C. § 9607(e). Even assuming, however, that contracts absolving parties from CERCLA liability may be binding, the Court holds, for the reasons that follow, that the contract clause at issue here cannot be construed to bar ICL from pursuing the present action.

At the outset, the Court notes that Stevens' reliance on the Court of Appeals decision in *Mardan*, is, to say the least, disingenuous. When Stevens cites to and quotes from *Mardan* he fails to point out that the *Mardan* District Court construed the meaning of an "as is" clause under New York law and rejected precisely the same argument that Stevens now presents to this Court. Thus, while the *Mardan* district court held that the settlement agreement barred the CERCLA claims at issue, it also stated:

> As Mardan correctly points out, the warranty disclaimer is effective to preclude only causes of action which are based upon breach of warranty theory. Mardan's lawsuit is based not upon warranty theory but rather upon the statutory cause of action created by Section 107(a) of CERCLA. *Therefore, [the "as is" clause] of the Purchase Agreement does not defeat plaintiff's recovery.*

*Mardan Corp. v. CGC Music, Ltd.*, 600 F.Supp. 1049, 1055 (D.Ariz.1984). This Court agrees with the *Mardan* court's interpretation of New York law. Accordingly, this Court holds that the "as is" clause of the Contract cannot be construed to bar the present action by ICL. *Accord The Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994 (D.N.J.1988) (Relying on *Mardan* and holding that "as is" clause, under New Jersey law, does not bar CERCLA claim). In view of the foregoing the Court rejects the argument that ICL's CERCLA lawsuit is barred by the "as is" clause of the Contract. Since ICL may maintain its CERCLA claim it is unnecessary to decide whether ICL may also recover for breach of the Contract.

### ii. *The Statutory Defense*

■ As noted above, Section 9607 sets forth certain defenses that a CERCLA defendant may claim. The statutory defense at issue here has been quoted above and is commonly known as the "third party" defense. Under certain circumstances, this provision absolves a CERCLA defendant from liability where he can show that the release of hazardous substances and the damages resulting therefrom were caused solely by the act or omission of a third party. Significantly, the third party defense is not available where the third party's action occurs "within a contractual relationship, existing directly or indirectly" with the defendant. 42 U.S.C. § 9607(b)(3).

Stevens attempts to take advantage of the third party defense by arguing that a lease is not a "contractual relationship" within the meaning of CERCLA and by making a convoluted argument that refers to the meaning of language in the Clean Water Act, 33 U.S.C. § 1251 *et seq.* Stevens' argument as to the meaning of the phrase "contractual relationship" is flatly contradicted by the definitional section of CERCLA. That section provides, in pertinent part:

> The term "contractual relationship", for the purpose of section 9607(b)(3) of this title, includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession. . . .

42 U.S.C. § 9601(35)(A). Since it is clear that the term "contractual relationship" is broad enough to include lease agreements, the Court need not discuss Stevens' reference to the Clean Water Act. The Court notes, however, that CERCLA's reference to the Clean Water Act is commonly interpreted to mean that CERCLA incorporates the strict liability standard of the Clean Water Act. *See Shore Realty*, 759 F.2d at 1042; *Violet v. Picillo*, 648 F.Supp. 1283, 1290 (D.R.I.1986); *United States v. Chem-*

*Dyne,* 572 F.Supp. 802, 805 (S.D.Ohio 1983). For the foregoing reasons the Court holds that CERCLA's third party defense is not available to Stevens.

### iii. *Equitable Estoppel*

■ Stevens next argues that application of the doctrine of equitable estoppel bars completely ICL's claim. According to Stevens it would be "grossly inequitable" for ICL to recover since it purchased the property "as is" after inspection by an engineer.

While ICL concedes that it was possible to conduct a more in-depth inspection of the Duffy Avenue Site, it argues that it would be "decidedly inequitable to conclude from this that ICL must absorb the response costs made necessary by Stevens' lessee of twelve years." ICL further points out that if Stevens' claim of ignorance of violations of environmental requirements is true, the equities weigh in favor of holding Stevens liable since he "buried his head in the sand" and seeks to impose liability upon an "unwary purchaser."

In view of the foregoing facts, the Court holds that equitable estoppel does not act as a complete bar to ICL's CERCLA claim. Upon further factual development equitable principles may come into play if the Court chooses to consider them when exercising its discretion to apportion responsibility for response costs. *Accord Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 90 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989).

### C. Levitt's CERCLA Liability

■ As noted above, Levitt, an officer of MDI, and MDI are named as defendants because MDI was Stevens' tenant at the Duffy Avenue Site prior to the sale to ICL. While the Court's records indicate that these defendants were, at one time, represented by counsel, that attorney is no longer participating in this litigation.

In its initial moving papers ICL represented that neither Levitt nor MDI had answered the complaint and that ICL was entitled to a default judgment. ICL further states that it has not moved for a default judgment because it believes that Levitt's and MDI's financial position would make any judgment uncollectible and that the sole financially responsible defendant is Stevens. After ICL made this motion Levitt, appearing *pro se,* submitted a document entitled "answer and affidavit." In the interests of fairness, the Court will consider Levitt's submission in connection with its decision on these motions.

Levitt's submission states that ICL's papers contain various factual inaccuracies. According to Levitt, MDI never discharged hazardous materials into the soil at the Duffy Avenue Site and never operated the premises when hazardous wastes may have been discharged. Levitt further states that if any hazardous chemicals were found at the Duffy Avenue Site, they may have been put there by ICL or by the Alsy Manufacturing Company ("Alsy")—a business located next door to MDI.

ICL's response to Levitt states that it has submitted numerous documents showing that violations of environmental violations have, in fact, taken place at the Duffy Avenue Site. ICL further states that even if Alsy was in any way responsible for the contamination of the Duffy Avenue Site, this fact does not absolve Levitt from liability since Alsy was a sublessee of MDI and, therefore, was in a contractual relationship with MDI within the meaning of CERCLA.

While Levitt's submission raises several factual questions, it does not absolve Levitt from CERCLA liability. Issues as to Alsy's liability and Levitt's relationship with Alsy must await further factual development. Issues concerning the identification of chemicals present at the Duffy Avenue Site and the dates on which such substances were or may be released must also, as discussed more fully below, await further factual development.

### IV. *Amounts Recoverable*

ICL's motion seeks entry of a judgment awarding it all costs incurred thus far in connection with the testing and cleanup of the Duffy Avenue Site. ICL also seeks a declaratory judgment holding defendants

liable for additional costs that may arise in the future in connection with ICL's investigation and cleanup of the Duffy Avenue Site. Stevens contests ICL's right to recover the amounts expended thus far on various grounds.

While the Court holds that factual questions exist concerning the amount of money that may be collected from Stevens, the Court notes that it is appropriate, at this juncture, to discuss certain legal issues raised by the parties. Accordingly, the Court will outline the type of costs that may be recovered and will defer, to a later date, resolution of the exact dollar amount that ICL may recover from defendants.

Parties liable under CERCLA are responsible for payment of the costs enumerated in Section 9607. When the party seeking recovery is an individual or other non-governmental agency, CERCLA provides for the payment of "necessary costs of *response*" that are consistent with the national contingency plan and any "damages for injury to ... natural resources ... including the reasonable costs of assessing such injury...." 42 U.S.C. § 9607(a) (emphasis added).

CERCLA defines the term "response" as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). The terms "remove" or "removal" are, in turn, defined to mean "cleanup or removal of released hazardous substances from the environment" and actions that are necessary to "monitor, assess and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or the environment." 42 U.S.C. § 9601(23). The terms "remedy" and "remedial action" are similarly broadly defined to include actions "consistent with a permanent remedy instead of or in addition to removal actions." 42 U.S.C. § 9601(24).

■ According to Stevens, ICL may not recover because the costs allegedly incurred were not undertaken pursuant to a governmental order. This Court rejects the notion that a governmental order is a necessary prerequisite to recovery in a private CERCLA action. To adopt such a rule would do little to promote the effectiveness of private actions and would not further CERCLA's goal of encouraging environmental cleanup activities. *City of New York v. Exxon Corp.*, 633 F.Supp. 609, 616–17 (S.D.N.Y.1986); *accord, Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir.1986); *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 290 (N.D.Cal.1984).

Stevens next argues that ICL's investigatory and closure costs are not recoverable under CERCLA. The Court has outlined the statutory definition of "response costs." After a full hearing on the costs incurred, the Court will determine whether ICL's costs are recoverable. The Court notes, however, that the definitions referred to above include those necessary to "monitor, assess and evaluate the release or threat of release of hazardous substances," 42 U.S.C. § 9601(23), as well as all costs consistent with a "permanent remedy taken instead of or in addition to removal actions," 42 U.S.C. § 9601(24). Thus, it appears, at this point, that ICL's investigatory and closure costs are, indeed, recoverable.

Stevens' final quarrel with the dollar amount sought by ICL is that the expenses sought are duplicative. If there is any merit to Stevens' argument, it may well be that ICL is not entitled to recover the full measure of damages sought. In the absence of a hearing, however, the Court is in no position to rule on this issue.

## CONCLUSION

The presence of material issues of fact precludes the entry of a partial summary judgment in favor of ICL at this time. For the reasons stated above, the Court rejects Stevens' defenses based upon: (1) the "as is" clause of the Contract; (2) the statutory third party defense and (3) the principle of equitable estoppel. Accordingly, Stevens' motion for summary judgment is denied. A hearing is necessary to determine the exact nature of the hazardous substances released or threatened to be released and

the impact of any release by Alsy as well as the dollar amount that may be recovered by ICL. The parties are directed to contact the Court within thirty days of the date of this order to schedule a conference in this matter.

SO ORDERED.