In re STERLING STEEL TREATING, INC., Debtor.

Fred J. DERY, Trustee, Plaintiff,

v.

John L. BECKER II and Eileen Becker, Defendants.

Bankruptcy No. 86–02999–R.
Adv. No. 87–0831–R.

United States Bankruptcy Court, E.D. Michigan.

Jan. 13, 1989.

---

Donald Hutchinson, Detroit, Mich., for plaintiff.

Paul Steinberg, Southfield, Mich., for defendants.

## AMENDED MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

This adversary proceeding requires the Court to determine the extent of the parties' respective responsibilities for the cost of removing hazardous wastes on property purchased by the defendants from the bankruptcy estate.

### I. *Facts*

The debtor, Sterling Steel Treating, Inc. (Sterling Steel), was in the business of heat treating steel. On January 6, 1986, Sterling Steel filed a petition under Chapter 11 of the Bankruptcy Code. On January 22, 1987, the case was converted to Chapter 7. Fred J. Dery, the plaintiff in this adversary proceeding, was appointed trustee.

On March 24, 1987, Dery held a public auction of the debtor's real and personal property. All of the bidders at the auction, including the Beckers, were allowed to inspect the property fully. Included in the property to be sold was the site of the debtor's heat treating operations at 12200 Greenfield, Detroit, Michigan. The property was offered and sold in an "as-is" condition.

On the Greenfield property there was a trailer containing hazardous wastes. The

bidders were neither invited to nor discouraged from inspecting this trailer. The trustee was unaware of these hazardous wastes and thus did not advise the bidders of them. Apparently, no one showed any interest in the trailer and there was no discussion of it.

The Beckers' offer of $186,300 was accepted, and on March 30, 1987, the Court confirmed the sale to them.

Sometime later, but before the closing on the sale, the Beckers discovered the hazardous waste [1] in the trailer, and took immediate steps to dispose of the waste with the approval of the Environmental Protection Agency and in compliance with the EPA's National Contingency Plan.

At the closing on the sale, the Beckers paid the trustee $161,300, and withheld $25,000 as compensation for the cost of removing the wastes found in the trailer. The actual amount expended by the Beckers for the cleanup was $8,500.

On October 8, 1987, the trustee filed an adversary complaint to recover the balance of the purchase price. The Beckers filed an answer with affirmative defenses, alleging that the waste materials in the trailer constituted a material and substantial defect in the condition of the property of which the trustee and auctioneer should have been aware. The Beckers also alleged that the wastes in the trailer were not discoverable upon reasonable inspection by the bidders and that their decision to bid, or the amount of their bid, would have been materially affected if they had known about the wastes.

Both parties have filed motions for summary judgment. The trustee seeks a judgment compelling the Beckers to pay the $25,000 withheld from the purchase price or, if the estate is held liable for the cleanup costs, the difference between the amount withheld and the Beckers' actual cleanup expenditure. The Beckers seek a judgment that the estate is responsible for the cleanup costs.

## II. *Liability Under CERCLA*

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C.A. §§ 9601–9661 (West 1983 & Supp.1988), establishes a comprehensive response and financing program to abate and control problems posed by abandoned or inactive hazardous waste sites. CERCLA enables private parties to voluntarily clean up hazardous waste sites and then recover their cleanup costs from other potentially responsible parties. 42 U.S.C. § 9607(a)(4)(B). The Beckers claim that under that statute they properly withheld a portion of the purchase price as reimbursement for their cleanup costs.

Section 107, 42 U.S.C.A. § 9607(a) (West Supp.1988), is the liability section of CERCLA. It provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of

---

**1.** The parties have stipulated that the substances found in the trailer after the confirmation of the sale are hazardous wastes within the definition in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C.A. §§ 9601–9661 (West 1983 & Supp.1988).

response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title. The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

Pursuant to 42 U.S.C.A. § 9607(a)(1) and (2), the potentially responsible parties include, "the owner and operator of a ... facility [and] ... any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of...."

Sterling Steel owned and operated the property at 12200 Greenfield at the time the hazardous wastes were placed in the trailer. The Beckers are the current owners of the facility.[2] Therefore, both Sterling Steel and the Beckers are potentially responsible parties under CERCLA.

The bankruptcy estate is also a potentially responsible party. *In re T.P. Long Chemical Co.*, 45 B.R. 278 (Bankr.N. D. Ohio 1985). In that case, the court found that the EPA's claim for cleanup costs was a claim for an administrative expense against the estate. *Id.* at 283. The court reasoned that because the debtor, as debtor-in-possession, had operated the business and owned the hazardous waste while the case was in Chapter 11, and in light of the broad construction given to CERCLA, the estate was a potentially responsible party. *Id.* at 284. *See also In re Hemingway Transport, Inc.*, 73 B.R. 494, 499 (Bankr.D.Mass.1987).

The facts in this case are similar to those in *T.P. Long Chemical.* Sterling Steel operated the business while the case was in Chapter 11 and owned the trailer housing the hazardous waste. Both the trailer and the waste were property of the estate. Therefore, pursuant to these authorities, the Court concludes that the Chapter 7 estate is also a potentially responsible party.[3]

### III. *The Third Party Defense Under CERCLA*

CERCLA imposes strict liability upon responsible parties, subject only to the defenses provided in 42 U.S.C.A. § 9607(b)

---

**2.** Section 101 of CERCLA defines "facility" as: (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located....

42 U.S.C.A. § 9601(9) (West 1983). Since the Greenfield property is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed ...," it is a facility for purposes of CERCLA. The trailer in which the hazardous wastes were found also is a facility within this definition. *See United States v. Bliss,* 667 F.Supp. 1298, 1305 (E.D.Mo.1987).

**3.** The Court notes that the trustee does not argue otherwise.

(West 1983). *In re T.P. Long Chemical, Inc.*, 45 B.R. 278, 282 (Bankr.N.D. Ohio 1985). Section 107(b) states:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

42 U.S.C.A. § 9607(b) (West 1983).

■ The defense at issue in this case is the "third party" defense of subsection (b)(3). This defense exonerates from liability any party who can prove that the hazardous condition was due to the act of a third party with whom the defendant had no agency or contractual connection.[4] A landowner who innocently or involuntarily acquired contaminated property may invoke the third party defense if he establishes that he inquired into the previous owner- ship and uses of the property, that the inquiry did not reveal that hazardous wastes had been disposed of on the site and that he therefore had no reason to know that the property was contaminated. 42 U.S.C.A. § 9601(35)(A) (West Supp.1988).

When determining the adequacy of the inquiry made by the party invoking the third party defense, a court is required to—

take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presense of contamination at the property, and the ability to detect such contamination by appropriate inspection.

42 U.S.C.A. § 9601(35)(B) (West Supp. 1988).

A party invoking the third party defense must also show by a preponderance of the evidence that he exercised "due care with regard to the hazardous substance" and that "he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions...." 42 U.S.C.A. § 9607(b)(3) (West 1983).

■ The Beckers contend that they are exonerated from liability for cleanup costs at the Greenfield site because they meet the requirements of the third party defense.[5]

It is true that Sterling Steel was solely responsible for placement of the hazardous wastes in the trailer and that the Beckers exercised due care with respect to the waste once it was discovered. However, the Court must find that when the Beckers purchased the property, they did have reason to know that the property was contaminated.

---

**4.** The term "contractual relationship" excludes land contracts and other methods of transferring title or possession of property if the property was acquired after the hazardous substances were dumped there and the acquiring party can prove that he had no reason to know of the contamination. 42 U.S.C.A. § 9601(35)(A) (West Supp.1988).

**5.** The trustee does not assert this defense on behalf of the estate.

The Beckers had business dealings with Sterling Steel before purchasing the Greenfield property. Therefore, they were aware of the industrial uses of the property. The property was open for inspection before the sale, but the Beckers apparently made no attempt to inspect the trailer containing the hazardous waste. Accordingly, the Court concludes that the inquiry made by the Beckers prior to purchasing the Greenfield property was insufficient, and their claim that they had no reason to know that the property was contaminated with hazardous substances must be rejected. Thus, the Beckers do not satisfy one of the elements of the third party defense and are not entitled to its protection.

## IV. The Beckers' Standing Under CERCLA

■ The trustee argues that only parties without CERCLA liability can maintain a private cause of action against potentially responsible parties, and because the Beckers are themselves liable under CERCLA, they do not have standing to claim cleanup costs against the estate. However, the trustee has not cited any case law in support of this argument and this Court has been unable to find any that is persuasive.

Some courts have applied the somewhat analogous equitable defense of unclean hands to private response cost recovery actions under CERCLA. *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1058 (D.Ariz.1984); *D'Imperio v. United States*, 575 F.Supp. 248, 253 (D.N.J.1983).

Other courts have found that the unclean hands defense does not apply. In *United States v. Conservation Chemical Co.*, the court stated:

> To give effect to the legislative intent [of CERCLA], the 'any other person' language in 42 U.S.C. § 9607(a)(1)–(4)(B) must be construed to refer to persons other than federal or state governments, and not to persons other than those made responsible under CERCLA (citations omitted). Application of the unclean hands defense in this context would turn Congressional intent on its head.

628 F.Supp. 391, 404–05 (W.D.Mo.1985). *See also Chemical Waste Management,*

*Inc. v. Armstrong World Industries,* 669 F.Supp. 1285, 1292 (E.D.Pa.1987); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 291 (N.D.Cal.1984); *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1142 (E.D.Pa.1982).

This Court is persuaded by the reasoning of those courts that reject the unclean hands defense. Accordingly, this Court rejects the trustee's argument that because the Beckers are themselves responsible parties under CERCLA and therefore arguably have "unclean hands," they are not entitled to maintain this private cost recovery action.

## V. The Trustee's Caveat Emptor Defense

■ The trustee also argues that the doctrine of *caveat emptor* and the "as-is, where-is" terms of the sale are defenses to the estate's liability for cleanup costs. He contends that this condition of the sale "specifically excluded any representations or warranties concerning the condition of the premises or their fitness for any particular use." Joint Brief at 6.

A similar warranty disclaimer was discussed in *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049 (D.Ariz.1984). The court in that case found that such a disclaimer "is effective to preclude only causes of action which are based upon breach of warranty theory." *Id.* at 1055. The plaintiff's suit in *Mardan* was based upon CERCLA, not upon a breach of warranty theory, and the court found that the warranty disclaimer did not defeat Mardan's recovery of CERCLA response costs. *Id. See also In re Hemingway Transport, Inc.*, 73 B.R. 494, 506 (Bankr.D.Mass.1987).

The *caveat emptor* defense was discussed in *Smith Land & Improvement Corp. v. Celotex Corporation*, 851 F.2d 86, 90 (3rd Cir.1988), "Doctrines such as caveat emptor and 'clean hands,' which in some cases could bar relief regardless of the degree of culpability of the parties, do not comport with congressional objectives." As a result, the court concluded "that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may only be considered in mitigation of

amount due." *Id. See also Sunnen Products Co. v. Chemtech Industries, Inc.,* 658 F.Supp. 276, 278 n. 3 (E.D.Mo.1987).

The Beckers have withheld a portion of the purchase price as compensation for expenses incurred in cleaning up the hazardous wastes in the trailer; they have not made any breach of warranty claim. Accordingly, the fact that they purchased the property "as-is, where-is" has no impact on their claim that their retention of a portion of the purchase price is justified under CERCLA. The Court concludes that the trustee's claim of *caveat emptor* is not a defense to the estate's liability for the Beckers' response costs.

VI. *Contribution Under CERCLA*

CERCLA provides for contribution as follows:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

42 U.S.C.A. § 9613(f)(1) (West Supp.1988). This section "expressly conditions the amount of contribution on the application of equitable considerations." *Smith Land & Improvement Corp.,* 851 F.2d at 90.

■ Two equitable considerations suggest that the Beckers should bear at least some of the responsibility for the cleanup costs. First, although neither the doctrine of *caveat emptor* nor the "as-is" condition of the sale are defenses under CERCLA, they are equitable considerations in allocating response costs among responsible parties. Pursuant to the doctrine of *caveat emptor*, the Beckers bear the burden of

any defect in the property that they purchased and thus had the responsibility to undertake a thorough inspection. *Restatement (Second) of Torts* § 352 (1965). The "as-is" condition of the sale provided that much more notice to the Beckers of their potential responsibilities in this regard.

Second, the Beckers were sufficiently familiar with the operations conducted by Sterling Steel at the Greenfield property that they should have suspected that hazardous wastes may have been present, and they should have inspected the property as a result of those suspicions. Therefore, the Court concludes that the Beckers should bear some of the responsibility for the response costs.

■ On the other hand, there is one major equitable consideration suggesting that the estate should bear some of this responsibility. In the Court's view, it is significant that the trustee failed to disclose to the prospective purchasers at the sale that there were hazardous substances in the trailer. Although the trustee claims that he did not have actual knowledge of the contents of the trailer, he certainly should have had that knowledge, because he was responsible for selling the debtor's assets and should have known what he was selling.

■ After considering these equitable factors, the Court concludes that the cost of cleaning up the hazardous wastes found in the trailer should be borne equally by the estate and the Beckers.

The parties shall submit an order reflecting the Court's decision.