**WIEGMANN & ROSE INTERNATIONAL CORP., a South Carolina corporation, Plaintiff,**

v.

**NL INDUSTRIES, a New Jersey corporation, and Esselte Pendaflex Corporation, a New York corporation, Defendants.**

**No. C–88–4817 FMS.**

United States District Court, N.D. California.

April 19, 1990.

Robert D. Wyatt and Lawrence S. Bazel, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff.

Dirk M. Schenkkan, Howard, Rice, Nemerovsky, Canady, Robertson & Falk, San Francisco, Cal., for NL Industries, Inc.

Folger & Levin, Michael A. Kahn, Margaret R. Dollbaum and Gregory D. Call, San Francisco, Cal., for Esselte Pendaflex Corp.

## ORDER DENYING SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

This is an action arising under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA") in which the plaintiff seeks to hold the defendants liable for the costs of cleaning up property contaminated with hazardous wastes. The matter is currently before the Court on defendant NL Industries' motion for summary judgment. For the reasons discussed herein, the Court hereby DENIES the motion for summary judgment.

## FACTUAL BACKGROUND

On May 23, 1975, NL Industries, Inc., ("NL"), sold 23 acres of property located at 2801 Grant Road, Richmond, California to Wiegmann & Rose Machine Works. In September of 1975, Wiegmann & Rose Machine Works sold all of its stock to Wiegmann & Rose International Corp. ("Wiegmann & Rose"), the plaintiff in this lawsuit. It is undisputed that a portion of the Grant Road property, designated "Site R" by the plaintiffs, is contaminated with hazardous wastes.

There are two different kinds of hazardous wastes on the property, each of which is from a different source. In 1980, the California Department of Health Services investigated the site and discovered that it was contaminated with heavy metals. The source of these heavy metals has been determined to be used foundry sands dumped on the property in the early 1970s. When the heavy metals were discovered, the Department of Health Services ordered Wiegmann & Rose to begin an extensive remedial investigation of the site. Pursuant to this directive, Wiegmann & Rose installed groundwater monitoring wells, analyzed soil borings, and prepared proposals and reports regarding the cleanup of the site.

In 1987, based on evidence of possible additional contamination, the Department of Health Services directed Wiegmann & Rose to investigate whether there were buried metal drums on the site. Wiegmann & Rose excavated a portion of the site in August of 1988 and did indeed discover buried metal drums. These drums had been leaking over the years and had contaminated the site with used industrial solvents known as "volatile organic carbons" ("VOCS"). There is evidence in the record that these drums were buried on the site in 1973 or 1974. (See, Fromm Declaration at 2, ¶ 4.) Wiegmann & Rose has spent over $500,000.00 thus far in investigating the contamination and planning for remedial action on the site.

In December of 1988, Wiegmann & Rose filed this action against NL Industries and Esselte Pendaflex Corporation seeking to recover the response costs it has already incurred, and those it will incur in the future, in the cleanup of the site. Wiegmann & Rose contends that NL Industries owned the land during the time it was contaminated with hazardous wastes, and that Esselte Pendaflex ("Esselte") is the successor to the corporation that buried the metal drums on the site. The complaint contains four causes of action—two arising under the CERCLA statute and two arising under the state law of equitable indemnity.[1]

The matter is now before the Court on defendant NL Industries' motion for summary judgment. The basis for NL's motion is simple. According to NL, when it sold the property to Wiegmann & Rose in 1975, both the land and the buildings on it were conveyed in an "as is" condition.[2]

---

1. Although there are two different bases of liability alleged, the parties have argued only the issue of CERCLA liability on this motion. Accordingly, the Court will not address the causes of action for equitable indemnity.

2. This fact is in dispute. Wiegmann & Rose contends that only the buildings, not the land, were conveyed "as is."

NL contends that this "as is" clause contained in the deed conveying the property releases it from any liability to Wiegmann & Rose under CERCLA for costs of removing the hazardous wastes from the property. In opposition, Wiegmann & Rose argues that, as a matter of law, the "as is" clause does not release NL from strict liability under CERCLA. Defendant Esselte has joined in the plaintiff's opposition to the motion.

## ANALYSIS

The issue to be decided by this Court is whether an "as is" clause, contained in a deed conveying property prior to the enactment of CERCLA, operates as a release of CERCLA liability for a party who would otherwise be strictly liable under the statute. For the reasons discussed below, the Court holds that such a provision does not act as a general release of CERCLA liability.

### I. *CERCLA.*

Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* in 1980 to facilitate the cleanup of hazardous waste disposal sites. *Exxon Corp. v. Hunt,* 475 U.S. 355, 359–360, 106 S.Ct. 1103, 1107–1108, 89 L.Ed.2d 364 (1986). The Act was a response by Congress to the threat to public health posed by the widespread use and disposal of toxic materials. Its purpose was "to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created." *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1455 (9th Cir.1986), citing 126 Cong. Record 31964 (statement of Rep. Florio). In order to effectuate these purposes, in Section 107(a) of the statute, Congress created a private cause of action for recovery of "response costs" against any person who owned or operated a facility at the time hazardous substances were disposed of at the facility or who otherwise contributed to the dumping of hazardous wastes at the

facility. *See,* 42 U.S.C. § 9607(a); *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989); *Cadillac Fairview/California v. Dow Chemical Co.,* 840 F.2d 691, 693 (9th Cir.1988); *Mardan,* 804 F.2d at 1455.

To state a claim under Section 107(a), a plaintiff must allege (1) that the waste disposal site is a "facility" within the meaning of 42 U.S.C. § 9601(9); (2) that a "release" or "threatened release" of a "hazardous substance" has occurred; and (3) that such release has caused the plaintiff to incur response costs that are "consistent with the national contingency plan." 42 U.S.C. § 9607(a); *Ascon Properties, supra,* 866 F.2d at 1152. In addition, the defendants must fall within one of the four categories of parties liable under the statute as set forth in Section 107(a)(1)–(4). That section provides in pertinent part as follows:

*Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—*

(1) the owner and operator of a vessel ... or a facility,

(2) *any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,*

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances ...

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, *from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—*

\*    \*    \*    \*    \*    \*

(B) any other necessary costs of response incurred by any other person con-

sistent with the national contingency plan; ....

42 U.S.C. § 9607(a) (emphasis added).

The only defenses available to a party otherwise liable under this section are set forth in Section 107(b), which provides in pertinent part:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release ... and the damages resulting therefrom were caused solely by—
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, ... and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; ....

42 U.S.C. § 9607(b). For any statutorily-defined responsible party, therefore, liability for response costs under CERCLA, is *strict*, notwithstanding any other provision of law, absent proof of one of the three enumerated defenses.

In this case, there is evidence in the record that both the foundry sands and the metal drums were disposed of on the Grant Road property during the time NL Industries owned the property. Thus, assuming Wiegmann & Rose can prove the other requisite elements of a Section 107(a) cause of action, NL will be strictly liable to Wiegmann & Rose for any response costs incurred in cleaning up the site, subject only to the "third party defense" of Section 107(b)(3) (quoted above). Nevertheless, NL has argued in this motion that it was released from all liability to Wiegmann & Rose arising out of the condition of the property, including liability under CERCLA, by the "as is" clause in the deed to the property.

## II. *The "As Is" Clause.*

The grant deed conveying the property from NL Industries to Wiegmann & Rose in 1975 states that the described property, together with the buildings and appurtenances thereon, is conveyed "all in an 'as is' condition." NL offers a two-part argument in support of its contention that the clause released it from CERCLA liability. First, NL contends that the clause is to be interpreted according to state law, rather than federal law. Second, NL argues that, under California law, the "as is" clause in the deed released NL from liability for all unknown defects, including the presence of hazardous waste contamination, thus releasing it from liability arising under CERCLA. This Court disagrees, and holds that the effect of the "as is" clause can be determined from the CERCLA statute alone, without resort to application of California law.

NL relies upon *Mardan v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986) for the proposition that state law ultimately determines whether an agreement releases CERCLA liability. In the *Mardan* case, the plaintiff, Mardan Corporation, purchased a musical instrument manufacturing plant from the defendant, Macmillan, Inc., in 1980. For several years prior to the sale of the plant, Macmillan had dumped hazardous wastes into a settling pond on the plant property. When Mardan acquired the plant, it continued to use the settling pond for the same purpose. Both Mardan and Macmillan were aware at the time of the sale that the settling pond contained hazardous wastes, and that it was subject to the regulatory activity of the Environmental Protection Agency and laws governing the disposal of hazardous wastes. *Mardan* at 1456.

In 1981, after a series of disputes had arisen, the parties entered into an "Agreement of General Settlement and Release," under which Macmillan paid Mardan $995,000 in settlement of all claims arising out of the purchase agreement. *Mardan*, 804 F.2d at 1456. Two years later in 1983, the EPA brought an administrative enforcement action against Mardan which required

Mardan to clean up and close the settling pond. Mardan then sued Macmillan under Section 107 of CERCLA seeking to recover part of the costs of the cleanup. Macmillan denied liability, claiming that the settlement agreement signed two years earlier had included a release of CERCLA liability. Mardan denied that the parties had intended the agreement to include such a release.

On appeal, the Ninth Circuit was called upon to determine whether the settlement agreement constituted an agreement "to insure, hold harmless, or indemnify a party" for liability under Section 107(a), as allowed by Section 107(e).[3] In making this determination, the court addressed the issue of whether state or federal law should govern the interpretation of the agreement. "From the outset, we must be clear that federal law governs the issue, for federal law always governs the validity of releases of federal causes of action." *Mardan* at 1457, citing *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952); *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir.1983). The court went on to conclude, however, that in interpreting the meaning and scope of the agreement as intended by the parties, "state law should provide the general content of federal law on the validity of releases of claims for cost-recovery under CERCLA." *Id.* at 1460. The court qualified its holding by noting that, even if state law is incorporated as a general matter, courts should reject specific state rules that are aberrant or hostile to federal interests. *Id.* at 1458.

Applying New York law, the court concluded that the parties had clearly intended the settlement agreement to include all possible claims related to the property, including possible claims under CERCLA. *Id.* at 1461. In reaching this conclusion, the court emphasized the importance of the parties' knowledge of the settling pond and its toxic contents, the fact that the parties

specifically addressed the possibility that corrective action would be required, and the fact that CERCLA had been in existence for over a year at the time the settlement agreement was executed. *Id.*

The facts in the *Mardan* case differ from the facts in this case in two significant ways. First, the parties to the settlement agreement in the *Mardan* case not only knew that the property contained a hazardous waste dump, but also were aware of and discussed the possibility of EPA enforcement action. In this case, the purchasers of the contaminated property had no knowledge, actual or constructive, of the presence of hazardous waste. Furthermore, neither of the parties could have anticipated the possibility of liability for response costs under CERCLA; the land was conveyed five years prior to the enactment of the statute. Second, the agreement subject to interpretation in *Mardan* was a comprehensive settlement and release, entered into subsequent to and separate from the purchase agreement, and intended to settle all disputes between the parties arising out of the purchase agreement. In contrast, the "as is" clause in this case, was standard, boiler-plate language routinely included in every contract and deed for the transfer of property owned by NL Industries. *See*, Admirand Declaration, ¶ 4. It is not even clear from the record that the "as is" clause was a negotiated term of the land sale contract. Moreover, as NL admits, the purpose of inserting the "as is" clause in all deeds was to protect NL from "any claim by the purchaser that the land or any improvements were *defective*." Admirand Declaration, ¶ 4 (emphasis added). In other words, the clause protected NL from claims for breach of warranty. The clause was not, and could not have been at that time, intended to release NL from statutory causes of action arising out of its contamination of the property.

---

**3.** Section 107(e) of the statute, 42 U.S.C. § 9607(e), allows private parties to insure, hold harmless, or indemnify a party for financial responsibility arising out of CERCLA liability. This section of the statute also provides, however, that "[n]o indemnification, hold harmless,

or similar agreement or *conveyance* shall be effective to transfer from the owner or operator of any vessel or facility ... to any other person the liability imposed under this section." § 9607(e)(1) (emphasis added).

Contrary to NL's assertions, the holding in *Mardan* does not require this Court to apply California law in order to determine whether the "as is" clause in the deed conveying the property at issue operated as a release of liability under CERCLA. As the Ninth Circuit cautioned in the *Mardan* case, "federal law always governs the validity of releases of federal causes of action." *Mardan*, 804 F.2d at 1457. This Court cannot apply state rules of interpretation that would frustrate specific objectives of a federal statute. *See, Mardan* at 1458, *United States v. Kimbell Foods*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979).

The provisions of Section 107(a), which apply "[n]otwithstanding any other provision or rule of law," demonstrate that Congress clearly intended former owners of contaminated property to be liable to current owners for any contamination that occurred during the time they owned the property. *See*, 42 U.S.C. § 9607(a)(2). The statute also provides that liability under Section 107(a) is strict, subject only to certain enumerated defenses. § 9607(b). These defenses do not include a sale of property subject to an "as is" provision. Although Section 107(e) *allows* parties to enter contracts affirmatively to insure or to indemnify against CERCLA liability, the statute also states explicitly that no general hold harmless agreement or conveyance is effective to transfer liability under Section 107(a) away from a responsible party. § 9607(e)(1). Courts have repeatedly noted that one of the primary objectives of CERCLA is to require responsible parties to bear the costs of remedying the conditions they created. *See, Mardan* at 1455.

In view of these provisions, and the intent of Congress in enacting the CERCLA statute, the Court holds that allowing an otherwise "responsible party" to avoid liability under Section 107, based on an "as is" clause in the deed conveying the proper-

ty, would clearly circumvent both the intent and the language of the statute. This is particularly true when the conveyance occurred prior to the enactment of CERCLA and the purchasers had no knowledge of the contamination. In reaching this conclusion, the Court has relied solely upon federal law, finding it unnecessary to draw upon any provisions of state law.[4]

This holding is in accordance with decisions of other district courts which have held that an "as is" clause precludes only claims for breach of warranty, and does not operate to release strict liability arising under a statutory cause of action created by CERCLA. *See, e.g., Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1055 (D.Ariz.1984) (*aff'd on other grounds*); *International Clinical Laboratories, Inc. v. Stevens*, 710 F.Supp. 466, 469–470 (E.D.N.Y.1989); *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1001 (D.N.J.1988); *Channel Master Satellite Systems, Inc. v. JFD Electronics Corp.*, 702 F.Supp. 1229, 1232 (E.D.N.C.1988); *In re Sterling Steel Treating, Inc.*, 94 B.R. 924, 930 (Bkrtcy.E. D.Mich.1989); *Amland Properties Corp. v. Aluminum Company of America*, 711 F.Supp. 784, 803 n. 20 (D.N.J.1989).

## CONCLUSION

Without resorting to the application of state law, the Court holds that the provisions of the CERCLA statute preclude a party from avoiding strict liability under CERCLA by relying on an "as is" provision contained in a deed transferring contaminated land. Accordingly, the Court hereby DENIES NL Industries' motion for summary judgment.

SO ORDERED.

---

4. By this holding, however, the Court does not imply that the result would be different under California law. As noted at the hearing on this matter, the Court anticipated that its holding would be the same regardless of whether it applied California or federal law. Furthermore, had California law allowed the "as is" clause to exonerate NL from strict liability under CERCLA, the result would have been hostile to the intent of the federal statute, thus precluding the application of California law.