**M & M REALTY COMPANY, Plaintiff,**

v.

**EBERTON TERMINAL CORPORATION,** Service Supply Company, Inc., H.J. Williams Company, Inc., Jenkins Professionals, Inc., Defendants.

Civil Action No. 1:CV–97–473.

United States District Court, M.D. Pennsylvania.

Sept. 11, 1997.

Richard H. Friedman, Buchanan Ingersoll, P.C., Harrisburg, PA, P. Kevin Brobson, Harrisburg, PA, Brian J. Clark, Buchanan Ingersoll Professional Corp., Harrisburg, PA, for M&M Realty Co.

Bernard A. Labuskes, Jr., Helen L. Gemmill, McNees, Wallace & Nurick, Scott A. Gould, Harrisburg, PA, for Eberton Terminal Corp.

David L. Williams, Lancaster, PA, for H.J. Williams Co., Inc.

Robert Alan Lerman, Kagen, Griffith, Strickler, Lerman and Solymos, York, PA, Lisa M. DiBernardo, Griffith, Strickler, Lerman, Solymos & Calkins, York, PA, for Jenkins Professionals, Inc.

Underwood Services Co., York, PA, pro se.

### MEMORANDUM

CALDWELL, District Judge.

In this civil action, Plaintiff, M&M Realty Co. ("M&M"), seeks to recover the costs associated with the removal of hazardous wastes from certain real property. Named as defendants are Eberton Terminal Corp. ("Eberton"), Underwood Services Co. ("Underwood"), H.J. Williams Co., Inc. ("Williams"), and Jenkins Professionals, Inc. ("Jenkins"). Before us is a motion to dismiss, filed by Eberton.

### I. Background

This case concerns a 6.9 acre parcel of industrial property on Hokes Mill Road, in West Manchester Township, York County, Pennsylvania (the "Property"). M&M purchased the Property from Eberton on March

27, 1995; Eberton had originally acquired the Property in two parcels from Underwood and Williams in the 1940s. In August of 1995, M&M discovered that the soil and water on the property were contaminated with petroleum and various hazardous chemicals.

The Eberton–M&M sale was conducted pursuant to an agreement executed on September 7, 1994 (the "Purchase Agreement"). The Purchase Agreement contained an "Environmental Contingency" clause, in which the parties addressed the possibility of environmental contamination on the Property. The Environmental Contingency provided that:

> BUYER, at BUYER's expense, shall obtain a Phase I Environmental Audit and conduct such other testing as it determines acceptable to BUYER. BUYER's obligation to purchase hereunder shall be subject to BUYER's approval of the aforementioned audit and BUYER's acceptance and approval of any hazardous waste conditions, oil and gasoline products, asbestos, or other environmental problems existing at the site, including, but not limited to, underground gasoline or oil storage tanks and wetlands. BUYER shall have the right to declare this Agreement null and void if the subject premises do not meet all Local, State, Regional and Federal environmental standards.... If BUYER closes on this Agreement, it acknowledges and represents (which shall survive closing hereunder) that it does so based on its own investigation and not on reliance of any statement or representation of or through SELLER regarding any matter or condition, including without limitation, any environmental condition, and BUYER accepts the property in "AS IS" condition.

(Am. Compl., Ex. B, at 4–5, ¶ 2(c)). In the Environmental Contingency, M&M also acknowledged the receipt of a copy of a Phase I audit performed by Jenkins for Eberton in 1991.

Rather than perform a new audit, M&M elected to hire Jenkins to conduct a re-inspection of the Property. After receiving a positive report from Jenkins, M&M purchased the property from Eberton.

After discovering the contamination of the property, M&M commenced this action. In an amended complaint, M&M advances claims against Eberton, Underwood, Williams, and Jenkins under Sections 107(a) and 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) & 9613(f), Sections 701(a), 702, 1101, and 705 of Pennsylvania's Hazardous Sites Cleanup Act, 35 Pa. Stat. Ann. §§ 6020.701(a), 6020.702, 6020.1101, & 6020.705, and under a variety of common-law theories. Eberton now moves for the dismissal of all claims against it.

II. *Standard of Review*

When considering a motion to dismiss under Rule 12(b)(6) "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Elec. Co.*, 23 F.3d 828, 830 (3d Cir.1994). The motion must be denied unless the plaintiff cannot prove any facts in support of the claim which would entitle it to relief. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

III. *Discussion*

A. **Standing Under CERCLA Section 107 (Count I)**

Count I of the complaint asserts a cost recovery claim under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Eberton argues that M&M is a potentially responsible party ("PRP") under CERCLA, and therefore lacks standing to bring a cost recovery action.

1. *Standing of a PRP to Bring a Cost Recovery Action*

As a general matter, a PRP's CERCLA remedies are limited to contribution actions under Section 113, 42 U.S.C. § 9613; Section 107 cost recovery actions are available only to innocent parties. *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116 (3d Cir.1997).

As the present owner of the Property, M&M falls under Section 107(a)(1)'s definition of a potentially responsible party. 42 U.S.C. § 9607(a). M&M argues, however, that it is entitled to protection under CERC-

LA's Section 107(b)(3) "innocent landowner" exception. 42 U.S.C. § 9607(b)(3). The Third Circuit has acknowledged, without adopting, the view followed in several circuits that a party entitled to a Section 107(b) exception to PRP status is entitled to bring a Section 107 cost recovery action. *New Castle*, 111 F.3d at 1123–24 (discussing *Rumpke of Ind., Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235 (7th Cir.1997); *United Tech. Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96 (1st Cir.1994); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir.1994)).

■ We conclude that, under the circumstances alleged in this case, if M&M can establish that it is an innocent landowner under Section 107(b)(3), it will be entitled to bring a cost recovery action. This conclusion is supported by every decision which we have found which considers the question. *Rumpke*, 107 F.3d at 1239–42; *Akzo Coatings*, 30 F.3d at 764; *Redwing Carriers, Inc., v. Saraland Apartments.*, 94 F.3d 1489, 1496 (11th Cir.1996); *Boyce v. Bumb*, 944 F.Supp. 807, 812 (N.D.Cal.1996); *Wolf, Inc. v. L & W Serv. Ctr., Inc.*, 1997 WL 141685 at *8 (D.Neb. March 27, 1997); *see also United Tech. Corp.*, 33 F.3d at 99 n. 8. While the Third Circuit expressly deferred ruling on this question in *New Castle*, 111 F.3d at 1123–24, dicta in *In re Reading Co.* seems to suggest that the court believes that an innocent owner may, at least in some circumstances, have standing to bring a cost recovery action under Section 107(a). 115 F.3d 1111, 1120 (3d Cir.1997) (discussing the Supreme Court's statement in *Key Tronic Corp. v. United Sates*, 511 U.S. 809, 816, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797, 805 (1994), that CERCLA "impliedly authorizes" overlapping remedies in Sections 113 and 107).

### 2. M&M's Status as an Innocent Landowner

Eberton argues, however, that M&M has failed to sufficiently assert its status as an innocent landowner. Analysis of this question requires an examination of the relevant sections of CERCLA.

CERCLA's "third party" defense provides that a PRP shall not be liable if it can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

. . .

(3) an act or omission of a third party other than an employee or agent of the [landowner asserting the defense], or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the [landowner,] . . . if the [landowner] establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions. . . .

42 U.S.C. § 9607(b).

This "third party" defense is, by itself, of limited value to a subsequent purchaser of contaminated land, as the purchaser will have a "contractual relationship" with all of its predecessors in title. To address this problem, Congress added a definition of "contractual relationship" in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), to create what has come to be know as the "innocent landowner" defense.

"Contractual relationship," for purposes of a Section 107(b)(3) defense, is defined in CERCLA Section 101(35). A "contractual relationship" will include transfers of ownership of land, unless the landowner asserting the defense acquired the land "after the disposal or placement of the hazardous substance on, in, or at the facility," and the landowner can establish by a preponderance of the evidence that:

At the time the [landowner] acquired the facility the [landowner] did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

42 U.S.C. § 9601(35)(A). A landowner will have "no reason to know" of disposal if it undertook, "at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability." 42 U.S.C. § 9601(35)(B).

In order to sustain a Section 107(b)(3) innocent landowner defense, therefore, a landowner which purchased property subsequent to the release or disposal of hazardous materials must establish by a preponderance of the evidence that:

1. Another party was the "sole cause" of the release of hazardous substances and the damages caused thereby;

2. The purchasing landowner did not actually know of the presence of the hazardous substance at the time of acquisition;

3. The purchasing landowner undertook appropriate inquiry at time of acquisition, in order to minimize its liability; and

4. The purchasing landowner exercised due care once the hazardous substance was discovered.

42 U.S.C. §§ 9607(b)(3), 9601(35)(A); *In re Hemingway Transp., Inc.*, 993 F.2d 915, 932 (1st Cir.1993); *Westfarm Assoc. Ltd. Partnership v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 682 (4th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996).

■ For a PRP to properly bring a cost recovery action under Section 107, it must adequately plead its status as an innocent landowner. We agree with Eberton that the amended complaint fails to clearly allege that M&M had no actual knowledge of the presence of hazardous substances on the Property. We also agree that while the amended complaint sets forth M&M's reliance on Jenkins' inspection of the Property, it does not allege that M&M undertook "all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability."[1] 42 U.S.C. § 9601(35)(B).

Rather than dismissing Count I based on these flaws, however, we will give M&M an opportunity to amend the complaint to properly plead its status as an innocent landowner.[2]

## B. Effect of "As Is" Clause in Sales Agreement on CERCLA Claims (Counts I & II)

Eberton next argues that the "as is" provisions of the Environmental Contingency allocated all environmental liability to M&M, and prevent M&M from suing Eberton under CERCLA.

M&M and Eberton agree that parties may allocate CERCLA liability among themselves. *See SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 158 (3d Cir.1996); 42 U.S.C. § 9607(e)(1). They disagree, however, as to the effect of the Environmental Contingency on M&M's CERCLA claims.

■ The allocation of CERCLA liability is governed by state contract law. *SmithKline*, 89 F.3d at 158; *Hatco Corp. v. W.R. Grace & Co.-Conn.*, 59 F.3d 400, 404–05 (3d Cir.1995); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 215 (3d Cir.1994). There is no dispute that the relevant state law in this case is the law of Pennsylvania.

We have been unable to find any reported case which considers the effect of an "as is" provision on CERCLA liability under Pennsylvania law. In support of its position that

---

1. Indeed, the allegation in Paragraph 31 of the complaint that "[s]ubsequent to April 1, 1995, a review of DEP files on the Hokes Mill Road Site revealed past environmental issues with respect to the Site" suggests that M&M may have failed to sufficiently investigate previous uses of the Property.

2. We do not agree with Eberton that M&M's reliance on Jenkins' allegedly defective environmental assessment establishes a *per se* failure to adequately investigate. While Defendants may be entitled to raise the reasonableness of M&M's reliance on Jenkins' investigation, we can not conclude for purposes of a motion to dismiss that a buyer's reliance on an expert's environmental assessment is unreasonable merely because the assessment is later revealed to be faulty.

Counts I and II are barred, Eberton relies on *PBS Coals, Inc. v. Burnham Coal Co.*, 384 Pa.Super. 323, 558 A.2d 562 (1989). In *PBS Coals*, the Pennsylvania Superior Court ruled that an "as is" clause in a contract for the sale of coal mining properties was sufficient to transfer responsibility to correct mine drainage problems under Pennsylvania's Clean Streams Law, 35 Pa. Stat. Ann §§ 691.1–691.1001, and Surface Mining Conservation and Reclamation Act, 52 Pa. Stat. Ann. §§ 1396.1–1396.19a. 384 Pa.Super. at 328–29, 558 A.2d at 564–65.

The holding of *PBS Coals* does not compel a similar outcome here, however. The Superior Court did not consider in that case liability under CERCLA, or under its Pennsylvania equivalent, the Hazardous Sites Cleanup Act, 35 Pa. Stat. Ann. §§ 6020.101–6020.1305. *PBS Coals* addresses the allocation of responsibility for the control and correction of illegal mine discharges. Such responsibility is generally placed upon the current landowner, and is, by its very nature, a present duty of the owner of a mine. *See* 35 Pa. Stat. Ann. § 691.315(a). *PBS Coals'* conclusion that an "as is" clause will leave the buyer of coal mining property responsible for the correction of present discharge problems sheds little light on the allocation of CERCLA liability between a buyer and a seller.

 In the absence of Pennsylvania law on the question, we will follow the reasoning of the majority of federal courts to consider this question, and conclude that there can be no allocation of CERCLA liability without explicit language of indemnification, clearly manifesting the parties' intent to transfer environmental liability. *See Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345, 355–58 (D.N.J.1991); *Wiegmann & Rose Int'l Corp. v. NL Indus.*, 735 F.Supp. 957 (N.D.Cal. 1990); *International Clinical Lab., Inc. v. Stevens*, 710 F.Supp. 466, 469–70 (E.D.N.Y. 1989); *Channel Master Satellite Sys., Inc. v. JFD Elec. Corp.*, 702 F.Supp. 1229, 1231–32 (E.D.N.C.1988); *see also New West Urban Renewal Co. v. Westinghouse Elec. Corp.*, 909 F.Supp. 219, 223–24 (D.N.J.1995) (applying New Jersey's Environmental Cleanup Responsibility Act, but discussing CERCLA liability). In the absence of such clear and explicit language, an "as is" clause will serve only to bar state law actions for breach of warranty. *See Wiegmann & Rose*, 735 F.Supp. at 961–62; *International Clinical Lab.*, 710 F.Supp. at 469; *Channel Master Satellite*, 702 F.Supp. at 1232; *cf. Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1300 (6th Cir.1992).

The Environmental Contingency does not bar M&M's CERCLA claims against Eberton.

### C. Pennsylvania Hazardous Sites Cleanup Act ("HSCA") Notice Requirement (Counts III, IV, & V)

Counts III, IV, and V raise claims under HSCA. Eberton argues that we do not have jurisdiction over these claims, due to M&M's failure to provide notice as required by the statute. A court may exercise jurisdiction over a suit brought under Section 1115 of HSCA only after the plaintiff has "given notice to the department, to the host municipality and to the alleged violator," and sixty days have elapsed following that notice. 35 Pa. Stat. Ann. § 6020.1115(b).

M&M does not dispute that it has not given Section 1115(b) notice, but contends that its HSCA claims are not brought under Section 1115, and are therefore not subject to the notice requirement. Count III advances claims for cost recovery under HSCA Sections 701(a)(1), (a)(2), and 702, 35 Pa. Stat. Ann. §§ 6020.701(a)(1), (a)(2), 6020.702; Count IV advances claims of public nuisance under HSCA Section 1101, 35 Pa. Stat. Ann. § 6020.1101; Count V advances claims for contribution under HSCA Section 705, 35 Pa. Stat. Ann. § 6020.705.

Eberton responds that under *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137 (Pa.1997), the only cause of action under HSCA available to a private party is a citizen suit under Section 1115. In support of this argument, Eberton relies on the *Redland Soccer Club* court's statement that "Section 6020.1115 is the only section of HSCA that authorizes citizen suits." 696 A.2d at 147.

Eberton's argument is without merit. The language it quotes from *Redland Soccer Club*

means merely that a *citizen suit* brought under HSCA must necessarily be brought under Section 1115. *Id.* It in no way suggests that citizen suits are the only private causes of action available under HSCA. Unlike the claims raised in Counts III, IV, and V, a HSCA citizen suit under Section 1115 is brought by "a person who has experienced or is threatened with personal injury or property damage as a result of a release of a hazardous substance ... to prevent or abate a violation of this act...." 35 Pa. Stat. Ann. § 6020.1115(a). *Redland Soccer Club* has no bearing on the claims brought by M&M.

■ The controlling case on this question is, therefore, *Smith v. Weaver*, 445 Pa.Super. 461, 665 A.2d 1215 (1995), in which the Superior Court ruled that private causes of action exist under Sections 702 and 1101 of HSCA. *Id.* at 471–75, 665 A.2d at 1220–21. We may properly exercise jurisdiction over Counts III, IV, and V.

### D. Common-Law Indemnification and Contribution (Count VI)

Count VI advances common-law claims for indemnification and contribution. Eberton argues that these claims are preempted by CERCLA, and that Count VI fails to state a claim for indemnification or contribution.

■ Common law claims for contribution are preempted by CERCLA. *In re Reading Co.*, 115 F.3d 1111, 1117 (3d Cir.1997). M&M's contribution claims must therefore be dismissed.[3]

While *Reading* discusses the preemption of common–law claims for contribution and restitution, it does not address indemnification claims. We find nonetheless that indemnification claims such as those advanced by M&M here are also preempted by CERCLA. Count VI seeks to recover the cost of remediation from the Property's prior owners. (Am. Compl. at 17). While this claim is couched as one for "indemnity and/or contribution," *id.*, this non-contractual indemnity claim is in reality merely another attempt to

obtain contribution. Such a claim is, like M&M's common-law claim for contribution, preempted by CERCLA. *See United States v. Cannons Eng'g. Corp.*, 899 F.2d 79, 92–93 (1st Cir.1990); *United States v. Pretty Prod., Inc.*, 780 F.Supp. 1488, 1495–96 (S.D.Ohio 1991); *Allied Corp. v. Frola*, 1993 WL 388970, at *11 (D.N.J. Sept.21, 1993).

Because M&M's common–law claims for contribution and indemnity are preempted by CERCLA, Count VI must be dismissed as to all Defendants.

### E. Misrepresentation (Counts VII and VIII)

In Counts VII and VIII, M&M raises claims of fraudulent and negligent misrepresentation. Eberton argues that these claims must be dismissed, as the Environmental Contingency in the Purchase Agreement will prevent M&M from establishing justifiable reliance.

■ Justifiable reliance is an essential element of a claim for either fraudulent or negligent misrepresentation. *Rempel v. Nationwide Life Ins. Co.*, 471 Pa. 404, 408, 370 A.2d 366, 367–68 (1977). *Bash v. Bell Tel. Co.*, 411 Pa.Super. 347, 358–59, 601 A.2d 825, 831 (1992); *Allstate Ins. Co. v. A.M. Pugh Assoc., Inc.*, 604 F.Supp. 85, 97 (M.D.Pa. 1984);

The Environmental Contingency expressly provides that:

> If BUYER closes on this Agreement, it acknowledges and represents (which shall survive closing hereunder) that it *does so based on its own investigation and not on reliance of any statement or representation of or through SELLER* regarding any matter or condition, including without limitation, any environmental condition, and BUYER accepts the property in "AS IS" condition.

(Am. Compl., Ex. B, at 4, ¶ 2(c) (emphasis added)). M&M's unambiguous agreement to undertake the purchase of the Property in reliance upon its own investigation and with-

---

3. M&M argues that CERCLA preempts its contribution claims only to the extent that the funds sought are otherwise recoverable under CERCLA. We reject this argument as inconsistent with the Third Circuit's unequivocal holding in *Reading* that *all* common-law contribution claims are preempted by Section 113(f) of CERCLA. 115 F.3d at 1117.

out any reliance upon any statements by Eberton precludes M&M's suggestion that it justifiably relied upon any representations by Eberton in entering into the agreement and purchasing the property. *Bowman v. Meadow Ridge, Inc.,* 419 Pa.Super. 511, 517, 615 A.2d 755, 758–59 (1992).

The cases relied upon by M&M do not support its argument that, because it has alleged fraud, it may avoid the effect of the Environmental Contingency altogether. *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402 (3d Cir.1981) and *Myers v. McHenry,* 398 Pa.Super. 100, 580 A.2d 860 (1990) address the applicability of the fraud exception to the parol evidence rule when the contract in question contains an integration clause; these cases do not consider an express disclaimer of reliance such as the one set forth in the Purchase Agreement. Likewise, the contract at issue in *Gopher Oil Co. v. Union Oil Co.,* 955 F.2d 519 (8th Cir.1992) contained an "as is" provision, but contained no language disclaiming reliance. Finally, *LeDonne v. Kessler,* 256 Pa.Super. 280, 389 A.2d 1123 (1978) reaches a conclusion directly contrary to that advanced by M&M; in *LeDonne,* the Superior Court ruled that the integration clause in the contract, coupled with the buyers' actual knowledge of the problem in question, barred their introduction of parol evidence of fraud. *Id.* at 293–94, 389 A.2d at 1130.[4]

We see no reason to frustrate the express and explicit disclaimer of reliance contained in the Environmental Contingency. By agreeing to the terms of the Contingency, M&M waived any claim of fraud it might bring against Eberton based on the Purchase Agreement or the actual sale of the Property. *Bowman,* 419 Pa.Super. at 517, 615 A.2d at 758–59; *see also Lenihan v. Howe,* 449

Pa.Super. 426, 432–33, 674 A.2d 273, 276 (1996). Counts VII and VIII must be dismissed.

### F. Implied Warranty of Good Faith and Fair Dealing (Count IX)

Count IX advances a claim for a breach of the implied warranty of good faith and fair dealing. M&M alleges that Eberton breached this duty by misrepresenting the environmental condition of the Property, and by withholding information about the Property.

 This claim, like M&M's fraud claims, is barred by the language of the Environmental Contingency. Implied warranties can be invoked only when doing so would not conflict with the express provisions of the contract. *USX Corp. v. Prime Leasing, Inc.,* 988 F.2d 433, 438–39 (3d Cir.1993); *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 198, 519 A.2d 385, 388 (1986). The language in the Environmental Contingency providing that M&M purchased the Property "as is,"[5] in reliance upon its own investigations and not in reliance upon any representations by Eberton, will bar any implied warranty claim by M&M. Count IX must be dismissed.

We will issue an appropriate order.

### ORDER

AND NOW, this 12th day of September, 1997, upon consideration of Defendant Eberton Terminal Corp.'s motion to dismiss the amended complaint, filed July 14, 1997 (Doc. No. 16), it is Ordered that the motion is granted in part and denied in part:

1. M&M is granted leave to amend its complaint within twenty (20) days of the date of this order to properly plead its

---

**4.** M&M's reliance on *LeDonne* may result from that case's discussion of *National Building Leasing, Inc. v. Byler,* 252 Pa.Super. 370, 381 A.2d 963 (1977), in which parol evidence of fraud was admitted despite an integration clause in an agreement of sale. *Byler,* however, has little relevance here, first because it does not address an express disclaimer of reliance, and second because it concerns the fraudulent concealment of "a situation which the buyer could not have envisioned at the time of contracting...." *LeDonne,* 256 Pa.Super. at 293, 389 A.2d at 1130; *Byler,* 252 Pa.Super. at 376, 381 A.2d at 966. It

is evident from the Environmental Contingency, and from M&M's allegations in the complaint, that M&M did envision the possibility of environmental contamination at the time it entered into the Purchase Agreement.

**5.** As discussed above, *see supra* Part III.B, an "as is" clause will generally bar state law warranty claims. *See Wiegmann & Rose,* 735 F.Supp. at 961–62; *International Clinical Lab.,* 710 F.Supp. at 469; *Channel Master Satellite,* 702 F.Supp. at 1232.

status as an innocent landowner under CERCLA, or Count I shall be dismissed.

2. Counts VI, VII, VIII, and IX are dismissed.

3. The motion is otherwise denied.

4. Defendant Eberton's original motion to dismiss (Doc. No. 4) is dismissed as moot.