**BOROUGH OF THROOP, Plaintiff,**

v.

**GOULD ELECTRONICS, INC., Defendant.**

**No. CIV.A.3:00cv215.**

United States District Court, M.D. Pennsylvania.

March 13, 2001.

Brian R. Elias, Douglas R. Blazey, George A. Reihner, Kevin C. Quinn, Elliott, Reihner, Siedzikowski & Egan, Blue Bell, PA, for Plaintiff.

Diana S. Donaldson, John M. Armstrong, Robert L. Collings, Theodore F. Haussman, Jr., Schnader, Harrison, Segal & Lewis, Philadelphia, PA, John M. Armstrong, Schnader, Harrison, Segal & Lewis, Cherry Hill, NJ, for Defendant.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

On February 3, 2000, Plaintiff filed the above captioned complaint asserting the

following four causes of action: (1) Abatement of Statutory Nuisance pursuant to 53 P.S. § 46202; (2) Violation of the Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.101 *et seq.;* (3) Violation of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 101 *et seq.,* 42 U.S.C. § 9601–9675; and (4) Quantum Meruit. (Doc. 1). Specifically, the Plaintiff seeks to recover "all professional fees, expenses and related costs it has incurred and will continue to incur as a result of Throop's need and commitment to actively and professionally comment upon, constructively influence, participate in and support the ongoing federal and Commonwealth lead remediation in Throop due to Gould's contamination of the environment in and around Throop." (Doc. 1).

In response, the Defendant denies any liability to the Plaintiff's assertions. On November 3, 2000, the Defendant filed a motion for judgment on the pleadings, or in the alternative, for summary judgment. (Doc. 26). in an effort to clear up the underlying issues in this matter, oral argument was held on February 28, 2001. As a result of the argument, and a review of the record, it is clear to this Court that there are operative facts in dispute. For the reasons set forth *infra,* we shall deny the Defendant's motion for summary judgment.

### Background

Beginning in the early 1960's and continuing to 1980, the Marjol Battery and Equipment Company ("Marjol") operated a battery lead recycling plant in Throop, Pennsylvania. In 1980, the Defendant in this case, Gould Electronics, Inc. ("Gould") purchased the Marjol Site ("Site") and operated it until April, 1982. The operation of the plant caused the escape of lead emissions on the Site as well as surrounding land. This activity has caused a multitude of lawsuits spanning a number of years and gives rise to this current action.

In 1988, following investigations of the Site by the Environmental Protection Agency ("EPA"), the Defendant entered into a Consent Order whereby Gould agreed "to conduct a comprehensive investigation of the Site and adjacent areas and to address immediate response measures, if any, required by applicable local, state and federal laws and regulations." (Doc. 30—Exhibit A). In 1990, Gould entered a second Consent Order with the EPA and the Pennsylvania Department of Environmental Protection ("PaDEP"), where Gould agreed to perform specific tasks which would ultimately assist the EPA and PaDEP with the selection of a final remedy for the Marjol Site. (Doc. 30—Exhibit B). The 1990 Consent Order further provides that following Gould's submission of reports and plans, the public would have the opportunity to review and comment on the proposed corrective measures. *Id.* Here, the public review and comment period took place in 1999 and 2000. (Doc. 26). At this time, Gould is awaiting the EPA's and PADEP's decision regarding the selection of the final corrective measure. (Docs. 26, 30—Exhibit B).

In 1995 Throop initiated an action (No. 3:95cv1453) against Gould for property damage to land that was owned by Throop and was allegedly caused by lead contamination. (Doc. 33). The parties settled the 1995 action before this Court by entering into a Release and Agreement. (Doc. 30—Exhibit C). As part of the agreement, Gould agreed to pay Throop $250,000.00 in exchange for the conveyance of approximately 9.312 acres of property adjacent to the Marjol Site. The Release provides the following

"For and in consideration of the . . . $250,000 . . . the Borough does

hereby release, acquit and forever discharge Gould...from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or in anyway growing out of, any and all known or unknown property damage claims by the Borough resulting from Gould's ownership of the Marjol Site. Further, the Borough does also release Gould from any claim it may have against Gould for environmental damage or damage to natural resources as defined by the Pennsylvania Hazardous Site Cleanup Act or any similar federal or state law or regulation."
(Doc. 30, Exhibit C, ¶ 5).

The Release further provides:

"[b]y entering into this Agreement, the Borough does not waive any rights it may have to object to the final Marjol site remediation plan proposed by Gould or to be proposed by Gould or adopted by the United States Environmental Protection Agency, or the Pennsylvania Environmental Protection Agency. Further, the Borough does not waive any right it may have to assert a claim for damages arising as a result of the remediation process." (Doc. 30, Exhibit C, ¶ 10).

In an effort to ensure that the appropriate remedy is selected by the EPA, the Plaintiff claims that they have incurred certain expenses and costs which they currently seek to recover from Gould. First, in 1994, Plaintiff retained the professional services of Gannett Fleming Engineers and Consultants ("Gannett") for the purpose of reviewing and assessing Gould's compliance with the EPA's mandated cleanup of the Site and other off-site prop-

erties. Second, on August 30, 1999, Plaintiff hired a land use consultant, Dr. Marvin Brotter, to review the physical setting of the site and surrounding properties, and to assess the future use and value of the land. Finally, on June 29, 1999, Plaintiff retained the legal services of Elliott Reihner Siedzikowski & Egan, P.C. ("ERS & E"). (Doc. 1).[1]

Beginning in August of 1994, and continuing through May of 1999, Gould voluntarily paid for Gannett's services, "so that Gannett Fleming could explain the scientific issues that would arise in the course of EPA's and PaDEP's consideration of an appropriate final remedy for Marjol." (Doc. 26). However, in May 1999, after paying $320,000.00 for Gannett's services, Gould ceased making payments because Gould contends that Throop was encouraging its consultants to advocate a particular point of view. Id.[2]

With respect to relief, Plaintiff seeks to recover all professional fees, expenses and related costs it has incurred and will continue to incur as a result of its participation in the lead remediation of Throop.

### Legal Standard

In the instant case, the Defendant has filed a motion for judgment on the pleadings, or, in the alternative for summary judgment. As to the Defendant's dispositive motion, the rules provide that if such a motion is substantiated by matters outside the pleading and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. Because the Court has considered evidence outside the pleadings,

---

**1.** It should be noted that attorneys from ERS & E currently represent the Plaintiff in the instant action.

**2.** Neither party has alleged that Gould has made any payments for the services of Dr. Brotter or ERS & E.

Defendant's motion shall be treated as one for summary judgment.[3]

A motion for summary judgment is used as a legal method of final disposition in a case. Such a motion is filed prior to trial and both parties are then afforded the opportunity to present their own evidence which either supports or challenges the motion. Once the filings are complete, the trial court is then able to review and analyze all the evidence to see if the case should proceed to trial. Because this method of resolving cases prior to trial is severe, a motion for summary judgment shall only be granted where no significant facts are in dispute.

■■■ We follow considerable guidance in determining whether summary judgment should be granted. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n. 4 (3d Cir.1997)(*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." [4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the allegations in his or her pleadings and present evidence through affidavits, depositions, or admissions to demonstrate that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987). Under this regime that we follow, the Court must view all the evidence in the light most favorable to the non-moving party. *Assaf v. Fields*, 178 F.3d 170, 173–174 (3d Cir.1999).

### Discussion

As noted above, on February 28, 2001 oral argument was held to clear up some

---

3. When construed as a summary judgment motion, all parties should be given reasonable opportunity to present all material made pertinent to such motion by Rule 56. Here, the Plaintiff has been alerted to the fact that the motion may be deemed a motion for summary judgment since November of 2000. Further, the filings by the Plaintiff confirm their awareness. Therefore, as we have considered other filings in addition to the Defendant's motion, we shall consider the motion as one for summary judgment.

4. These rules make it clear then, that in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). This instructs us that a fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the law applicable to the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir.1988). We are further instructed that an issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir.1987); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987).

of the underlying issues in this matter. Prior to the argument, counsel for both parties were given an outline of specific points to address during argument in an effort to pinpoint what, if any, facts were in dispute. There were four major topics [5] addressed by the parties, and as a result of the argument and the evidence submitted, the Court finds that some important facts remain in dispute.

*Statutory Considerations*

In making their motion for summary judgment, the Defendant first argued that Plaintiff is both unable to pursue a contribution claim and has no statutory authority under CERCLA or HSCA [6] for a damages claim. At this time, any argument concerning § 113 of CERCLA is of no consequence because Plaintiff acknowledges it was inappropriate to file under § 113. Further, Plaintiff argues that the complaint should be amended so the § 113 claim can be discarded and they should be permitted to pursue a claim under § 107.

Subsequent filings and argument by the Defendant reveal it is Gould's contention that Plaintiff as a Potentially Responsible Party (PRP) under 42 U.S.C. § 9607(a)(2) [7], is unable to show they are entitled to proceed as a third party or as an innocent party. However, if the Borough can prove it is an "innocent landowner" under § 107(b)(3), then the Borough is entitled to

a cost recovery action under § 107(a). *See M & M Realty Co. v. Eberton Terminal Corp.*, 977 F.Supp. 683, 686 (M.D.Pa.1997).

In order to be considered an innocent landowner under § 107(b), the Borough has to establish by a preponderance of the evidence the following:

1. the release or threat of release of a hazardous substance and the resulting damages were caused solely by—an act or omission of a third party,

2. the third party's act or omission did not occur in connection with a contractual relationship (directly or indirectly) with the Borough,

3. the Borough exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and

4. the Borough took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607(b).

■ Here, it is clear to the Court that both parties agree on the legal theories of the case. Therefore, the case basically can be narrowed down to two remaining issues—(1) whether Plaintiff can prove the

---

5. Although the parties were instructed to discuss what, if any, prior payments were made to Throop by Gould, there is no dispute as to what payments have been made. Specifically, both parties agreed that Gould had voluntarily paid $320,000.00 to Plaintiff for the Borough's costs and expenses associated with Gannett. Payments to Plaintiff stopped in May of 1999. At this time, there have been no other payments made to Throop by Gould. Therefore, we shall not address the issue of prior payments in this Memorandum.

6. Because the HSCA (35 P.S. § 6020.101 *et seq.*) is the Pennsylvania version of CERCLA,

we do not find it necessary to repeat our analysis under the HSCA.

7. The statute provides in relevant part:

"**§ 9607. Liability**
**(a) Covered persons** . . .
Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

**(2)** any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" 42 U.S.C. § 9607(a)(2).

Borough is entitled to proceed under § 107, and (2) whether Plaintiff is entitled to recover response costs.

Gould argues that Throop cannot meet the first, third, and fourth elements under § 107(b)(3). First, Gould argues that the definition of "release"[8] under CERCLA is meant to include Throop's failure to address the lead contamination for twenty years. Further, Gould characterizes Throop's passive activity and failure to address the problem as a potential cause of the "release or threat of release." 42 U.S.C. § 9607(b).

Second, Gould contends that the Borough was on notice about the battery casings eroding on Throop's property since 1975. Gould alleges that the Borough did not take action until 1988, the year Gould was required to take remediation action on the Throop property pursuant to a Consent Order. Furthermore, Gould claims that the Borough made no effort to restrict access to the property, never tested materials on the property, never remediated the property, or took action against Marjol or Gould.[9] Consequently, Gould argues that such inaction cannot be considered due care under § 107(b)(3).

With respect to element four, Gould argues that the Borough did nothing to prevent the disposal of hazardous substances on its property while Marjol was in business. In support of their argument, Gould argues that the Borough has not presented any evidence that it foresaw any potential problems, nor that it took any precautions as required under § 107(b)(3).

Plaintiff counters by arguing that a factual dispute exists regarding the Borough's awareness of the problem and the sufficiency of their actions. For example, Plaintiff maintains that the Borough never authorized Gould to store battery casings or other materials on the land, nor did they give Gould or its predecessors permission to engage in any activity which would cause or contribute to any environmental contamination. (Doc. 41, Exhibits 5, 7—Affidavits of P. Kucharski & E. Morrell). Specifically, Plaintiff argues that the contamination was caused solely by the acts and/or omissions of Gould and/or its predecessors. Plaintiff also attempts to claim that the fees sought in this action are in fact response costs which relate to the Borough's "quest for an appropriate government response to the contamination caused by Gould and its predecessors." (Doc. 40).

In the instant case, the Court is unable to make a determination as to—(1) when Throop knew of the contamination, (2) how much Throop knew about the contamination, and (3) what action could, or did, Throop take against the Defendant and the contamination. Therefore, both sides need to elaborate on the relevant facts so a factfinder can resolve the factual dispute. Although a motion for summary judgment is a valid tool, it is only appropriate where no operative facts are in dispute. Here, a review of all the documents indicates there are important facts in dispute. Plaintiff may proceed under a § 107 theory of recovery and it shall be left for another day whether the fees and expenses sought are in fact legitimate response costs. Conse-

8. Under 42 U.S.C. 9601(22), "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous

substance or pollutant or contaminant)...." 42 U.S.C. § 9601(22).

9. Specifically, Gould argues that the Borough did not seek or take any action until 1995 when it sued Gould claiming its property was contaminated.

quently, this case cannot be resolved on summary judgment and the matter shall proceed to trial.

*Consent Agreements*

■ Gould also argues that by entering into the 1988 and 1990 Consent Agreements with the EPA and the PaDEP, it cannot now be stripped of the protections that Congress provides. Specifically, Gould claims that Throop's contribution claims brought under CERCLA and HSCA are barred by § 113.

The Plaintiff agrees that only a PRP can bring a contribution claim under § 113 of CERCLA, however, the Plaintiff contends that since Throop is an "innocent party" rather than a PRP, they may bring a cost recovery action under § 107 of CERCLA. In support of their argument, Plaintiff cites to CERCLA § 107, 42 U.S.C. § 9607(a)(4)(B), which provides in relevant part:

"§ 9607. Liability

(a) Covered persons; scope; recoverable costs and damages...

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan...

42 U.S.C. § 9607(a)(4)(B).

Plaintiff argues that because the Borough fits in the category of "any other person" they should be permitted to recover "any other necessary costs." 42 U.S.C.

§ 9607(a)(4)(B), CERCLA § 107(a)(4)(B). In further support of their argument, Plaintiff cites to *City of Toledo v. Beazer Materials and Services, Inc.*, 923 F.Supp. 1001, 1006–1007 (N.D.Ohio 1996), for the proposition that costs associated with the monitoring, assessment, and evaluation of hazardous substances at a contaminated facility were recoverable as necessary response costs under § 107(a)(4)(B).[10] Therefore, Plaintiff maintains that the Consent Orders entered into by Gould do not preclude the Borough from recovering response costs under § 107 of CERCLA.

Gould further argues that Throop's remaining statutory and common law claims are preempted by CERCLA. *In re Reading Co.*, 115 F.3d 1111, 1119 (3d Cir.1997). Plaintiff counters this argument by asserting their claim is for cost recovery under § 107 of CERCLA and not for contribution under § 113. Moreover, Plaintiff agrees with the caselaw and argument set forth by the Defendant regarding § 113, however, Throop distinguishes their claim as one brought pursuant to § 107.

We find the doctrine of preemption does not apply to the obligations of the Plaintiff, and further the state and federal statutes fail to address such obligations. A borough is required to take its own action and abate things like nuisances. Further, there is no expressed or indirect intention of the legislature to preempt the whole field to preclude boroughs from dealing with the kind of conduct Gould was involved in throughout the Borough of Throop. Consequently, as we find the Plaintiff can proceed under § 107, Gould's arguments regarding contribution protection and preemption are moot.

---

10. Plaintiff also claims that the litigation costs associated with bringing an action to achieve CERCLA compliance are recoverable as a response cost under § 107(a)(4)(B). *See City of Toledo,* 923 F.Supp. at 1010.

*Settlement*

◼ Gould next argues that a plain reading of the 1996 "Release and Agreement" precludes Plaintiff from seeking damages against Gould for actions emanating from the settlement and any other actions by Defendant. Gould further contends that Plaintiff's present claims for response costs are truly claims for property and environmental damage. As a result, Gould argues that the 1996 Release expressly released Defendant Gould from any such liability.[11]

Plaintiff counters by arguing that the instant complaint seeks the recovery of costs which have been incurred due to Throop's "necessary participation" in the remedial process. (Doc. 33). In addition, Plaintiff argues that the Release does not preclude the Borough from participating in the remediation process and recovering related costs.

We find that the Release precludes the Borough from seeking any future property damage claims against Gould, however, there is nothing contained in the Release which prevents the Borough from bringing a claim regarding any cleanup of the Site. Therefore, the Borough's claim for response costs shall continue.

### Conclusion

Based on the aforementioned discussion, Defendant's motion for summary judgment is hereby denied.

### ORDER

NOW, this 13th Day of MARCH, 2001, it is hereby ORDERED that:

1. Since Plaintiff acknowledges they have no legitimate claim under 42 U.S.C. § 9613(f), the Defendant's motion for summary judgment (Doc. 26) is GRANTED insofar as it relates to any claim under § 113 of CERCLA;

2. In all other respects, Defendant's motion for summary judgment (Doc. 26) is DENIED and any claims under Count III of Plaintiff's complaint will proceed solely as a claim under 42 U.S.C. § 9607(b).

3. The parties should immediately proceed to complete discovery and other pretrial preparation to move this case to trial in accordance with this Court's Rescheduling Order of March 7, 2001 (Doc. 47).

4. The Clerk of Court is directed to mark the docket.

---

11. The relevant portions of the settlement can be found in this Memorandum on pages 368–369.